## In re SMITHFIELD CITY.

No. 4475.   Decided November 17, 1927.   (262 P. 105.)

*E. S. Chambers* and *Young & Bullen,* all of Logan, for appellant Smithfield City.

*Fonnesbeck & Nelson,* of Logan, for respondents.

McCREA, District Judge.

This is an appeal from a judgment and decree of the district court of the First judicial district restricting the corporate limits of Smithfield City, by detaching therefrom two parcels of land theretofore included within the corporate limits.

The proceeding was instituted by filing a petition under the provisions of section 771, Compiled Laws of 1917, which requires the petition to be signed by "a majority of the real property owners of any territory within and lying upon the borders of any incorporated city or town."

It is contended that the petition was insufficient, in that "a majority of the real property owners" failed to sign and

join in the petition. The evidence disclosed 93 landowners within the areas sought to be detached; that is, the names of 93 such landowners. There were, after striking names attached to the petition without proof of authority to sign, 62 names of "real property owners." This constituted a clear majority. But it appears that 4 of the named making up the total of 93 landowners were those of persons now deceased, whose estates had not been administered, so far at least as these lands were concerned, and who left respectively 19, 6, 12, and 6 heirs, none of whom signed the petition. It is accordingly contended that there were a total of 141 landowners, or, substituting the 43 heirs for the four ancestors whose names already appeared among the 93, as precision would seem to require, a total of 137 landowners. If this contention is sound, the petition was not that of a majority of the landowners.

There is no evidence in the record that the 4 ancestors died intestate, but, if they did, the property passed to the heirs at once, subject to the control of the court for purposes of administration. Compiled Laws, 1917, § 6405.

Upon this issue the court found the facts as follows:

"That as to all of these parties it was made to appear that neither they nor any of their heirs had been in possession, or claimed possession, of the tracts standing in said names on the plats for 20 years, or more. That the said tracts are all narrow boundary tracts, and are not inclosed by themselves, but are all inclosed in and farmed as a part of other respective fields, and have been exclusively so occupied and farmed by the owners of the said other fields, who signed the petition, and their predecessors in interest, for more than 20 years in each case. That the lands standing in the names of the above deceased parties are, with one exception, being the land standing in the name of Benjamin Aikin, in each case not more than a rod or two in width, and, being in each case farming land, it would not be practicable to either farm or use the same as separate tracts for farming purposes. In all but two cases the tracts were not assessed to any one. The court finds that none of these parties, or their heirs, are owners of any of the land embraced within said territory."

There was ample evidence to support these findings. Indeed, a study of the record convinces one that these narrow strips of land along fence lines between fields are the result of faulty surveys or faulty descriptions, probably both. If there is any ownership by the heirs, it is nothing more than a naked legal title. The court properly held that ownership in the heirs was not shown so as to include them among the landowners within the area affected.

As title and rights to real property vary from absolute and unqualified fee simple to that of a mere occupant, so the word "ownership" varies in its significance, according to the context and subject-matter. *Peterson* v. *Johnson,* 132 Wis. 280, 111 N. W. 659, 660.

"Ownership" of land has a broader signification than mere right to occupancy. An owner has dominion of a thing, real or personal, corporeal or incorporeal, which he has a right to enjoy and do with as he pleases. *U. S.* v. *Moore* (C. C.) 154 F. 712, 715.

The word "owner," as used in the statutes, is given the widest variety of construction, usually guided in some measure by the object sought to be accomplished in the particular instance. It has led some courts to declare that the word has no precise legal signification, and may be applied to any defined interest in real estate. *Merrill* v. *Merrill,* 119 Wis. 249, 96 N. W. 686.

In every case where construction is necessary to determine the sense in which the word is used, the object sought to be reached in the statute is the most important consideration. *Bank* v. *Leuch,* 155 Wis. 500, 144 N. W. 1122.

Many authorities to the same general effect are cited in the annotated case reported in 2 A. L. R. pp. 778 to 804, and, while not entirely agreed, we think that the weight of authority and the better reasoning defines the word "ownership," as used in statutes similar to the one here involved,

as proprietorship in or dominion over the property, rather than mere legal title without either proprietorship or dominion.

Titles are not determined, nor are they in any wise affected by proceedings such as this one. Choice of the form of local government alone is involved. Accordingly, we find no merit in the assignments of error in these regards.

Also, it is urged that the court erred in proceeding upon the petition because two disconnected tracts were involved in the one proceeding. The court found the fact to be that a majority of the landowners in each tract had ■ signed the petition. This finding has ample support in the evidence. We conclude that no prejudice has resulted. Had a majority of the landowners in either tract failed to petition, then, under the statute, the court could, and undoubtedly would, have refused to enter a decree excluding such tract from the city limits.

The findings of the court generally to the effect that the detached tracts are agricultural lands, with few, if any, buildings, and that they received no direct or ■ appreciable benefit from being within the corporate limits of the town, are amply supported by the evidence. In these respects the case is controlled by *In re Fullmer*, 33 Utah 43, 92 P. 768; and *Christensen v. Town of Clearfield*, 66 Utah 455, 243 P. 376.

Other errors assigned are without merit.

It is a matter of considerable doubt whether appellant has any right to be heard upon an appeal in this matter. After the signing and filing of findings of fact and conclusions of law, and before the making and filing of the decree, counsel for the petitioners and for protestant entered into a written stipulation with reference to the bonded indebtedness of the city and fixing the taxes to be assessed against the detached tracts for the purpose of fixing the

proportion of the bonded indebtedness to be borne and paid by those detached tracts. The stipulation also provided:

"It is further stipulated and agreed that the commissioners appointed by the court for the purpose of adjusting the equities and terms upon which said property should be excluded may make their report to the district court in conformity with this stipulation, and that thereupon a decree may be entered by the above-entitled court segregating the said property from Smithfield City and embody the terms as hereinabove stipulated."

It is not contended by appellant that the decree fails to embody the terms of the stipulation. On its face this stipulation would seem to us to be a stipulation and consent to the judgment and decree rendered, and, in the absence of some sufficient showing whereby the stipulation might be avoided it would appear to be a complete bar to further proceedings by either party. We have chosen, however, to rest our judgment upon the merits of the controversy.

The judgment and decree of the lower court are affirmed. Respondents to recover their costs.

CHERRY and HANSEN, JJ., concur.

THURMAN, C. J., and STRAUP, J., concur in the judgment on the merits.

FRICK, J., did not participate herein.