In re CHIEF CONSOLIDATED MINING CO. et al.

No. 4425.  Decided January 23, 1928.  Rehearing Denied May 8, 1928.
(266 P. 1044.)

*J. W. Robinson,* of Provo, for appellant.

*Baker & Baker,* of Eureka, and *Cheney, Jensen & Stephens,* of Salt Lake City, for petitioners.

GIDEON, J.

Mammoth City is a city of the third class situated in Juab county, this state. This proceeding is to restrict the corporate limits of such city by disconnecting certain described areas from its boundaries.

What is requisite to authorize a decree severing territory from the boundaries of an existing municipality and also the procedure to obtain such a decree is found in sections 771 to 775, Comp. Laws Utah 1917. Section 771 is as follows:

"Whenever a majority of the real property owners of any territory within and lying upon the borders of any incorporated city or town shall file, with the clerk of the district court of the county in which such territory lies, a petition praying that such territory be discon-

nected therefrom, and such petition sets forth reasons why such territory should be so disconnected from such city or town, and is accompanied with a map or plat of the territory sought to be disconnected, and designates no more than five persons who are empowered to act for such petitioners in such proceedings, such court shall cause a notice of the filing of the same to be served upon said city or town, in the same manner as a summons in a civil action, and shall also cause notice to be published in some newspaper having a general circulation in such city or town, for a period of ten days. Issue shall be joined and the cause tried as provided for the trial of civil causes, as nearly as may be. The proper authorities of such city or town, or any person interested in the subject matter of said petition, may appear and contest the granting of the same."

Section 772, so far as material here, is as follows:

"If the court finds that the petition was signed by a majority of the real property owners of the territory concerned, and that the allegations of the petition are true, and that justice and equity require that such territory or any part thereof should be disconnected from such city, it shall," etc.

The petition filed by a majority of the real property ownert in the areas sought to be disconnected conformed with the provisions of section 771, quoted. Notice was given as required. The mayor of Mammoth City, on behalf of such city, the officers and inhabitants thereof, filed a demurrer to the petition. The demurrer was overruled. An answer was filed, and the matter was heard on the issues thus presented. Findings of fact were made and a decree entered severing certain of the areas described in the petition from the boundaries of said city and denying the severance of other areas. An appeal was taken by the protestants from that part of the decree or judgment severing certain of the areas from the boundaries of the city.

Authority to disconnect any territory from the boundaries of an existing municipality is based, not only upon a compliance with section 771, but upon the further essential requirement "that justice and equity require that such

territory or any part thereof should be disconnected from such city." The right to have property detached from the boundaries of an existing municipality has been before this court in at least three cases: *Young* v. *Salt Lake City*, 24 Utah 331, 67 P. 1066; *In re Fullmer*, 33 Utah 43, 92 P. 768; *Christensen* v. *Town of Clearfield*, 66 Utah 455, 243 P. 376.

This court, in these cases, determined the rights of the parties upon facts made to appear in each case. The court did not, nor could it attempt to enunciate any general or definite statement of a rule of law to be controlling under other or different facts than those made to appear in the particular case under review. There is no reason to, nor do we, question the soundness of the conclusions in either of those cases. In the light of the facts appearing in the opinions of the court, no other or different conclusion would have been consonant with justice. If the connection or relation of the petitioners here to the municipality had been shown to be similar to the relationship of the petitioners in the reported cases, then the conclusions in those cases should and would have controlled the rights of the parties here. The facts in the instant case are not, however, in any particular similar to or like the facts presented and considered by the reported cases. There is little dispute, if any, in this record upon the essential facts involved in this controversy. The petitioners admittedly constitute a majority of the owners of the real property lying within the areas sought to be disconnected. There are few municipal improvements, if any, within the areas described in the petition. It is not shown that the municipality has constructed or maintained any electric lights, sewers, sidewalks, or other so-called municipal improvements in any of the areas. There is some testimony that the city has a volunteer fire department with a fire chief. It is the testimony of the fire chief and other municipal officers that this department of the city is at all times available to assist in the extinguishing of fires in any part of the boundaries of the city. There is also testimony

that the volunteer fire department has, whenever required, assisted in extinguishing fires on the property of the mining companies, and at numerous times has assisted in extinguishing brush fires in that part of the territory lying west of the inhabited portions of Mammoth City designated on the map accompanying the petition as area 2. This, in addition to its duty in protecting the inhabited areas against fires. The main road running through the inhabited area was constructed, and is kept in repair, by the city, and there is also some testimony that the road leading from the inhabited portion of Mammoth City to one of the areas, designated 3, was, to a limited extent, kept in repair by the municipality.

The undisputed testimony respecting the municipal benefits by way of municipal improvements such as above enumerated and as found by the court on any of the areas are not alone sufficient, in our judgment, to deny to the petitioners their claim for the severance of the areas from the boundaries of the municipality. Should the words "municipal benefits," as used in our decisions, under the facts appearing in this record, be confined to the narrow limits insisted upon by the petitioners? We think not. The statute is that the court shall decree a severance when justice and equity require it to be done. In the determination of what constitutes justice and equity, the facts in each case, under well-recognized principles of law, must, to a very large extent, determine that question.

Mammoth City is what is commonly known in this western country as a mining camp or mining town. The inhabited portion is located near the mouth or opening of a narrow canyon or gulch in Juab county. The canyon or gulch extends eastward from the inhabited portions of the city. The mining areas sought to be detached are located up the canyon northeastward from the inhabited portion of the city, and on rough and rugged mountain sides. It quite conclusively appears that the only means of going to and from

these mines is through the canyon or gulch leading down through the inhabited portion of Mammoth City.

If there were no mines operated in the immediate vicinity of the inhabited portion of Mammoth City, the city would cease to exist; in fact it never would have existed. The municipality was organized for the sole purpose of providing homes for those who work in and about the mines located within the boundaries of the city and other mines in the immediate vicinity. There is nothing outside and independent of these mines and mining claims to attract people to the vicinity or to give them any means of livelihood or excuse to reside there. There is no water in this immediate vicinity. It appears that the water used by the inhabitants is brought in by a pipe a distance of 14 or 15 miles. The country immediately surrounding the municipality is barren and mountainous, and outside of the minerals located therein, has no value except for grazing purposes, if for that. It is therefore apparent that the mines located within the boundaries of Mammoth City and the municipality itself, as stated by the trial judge, "are entirely tied up together—the whole thing is tied up together. In other words, the mines could not exist without the labor, and the labor could not exist without the mines—the whole thing is tied up together, and they ought to be tied up together."

It quite definitely appears that a large per cent of the men residing in Mammoth City are employees of the mines located within the boundaries of such city. The fact that the workmen needed to carry on the mining operations have a place to reside near the mines could not be otherwise than a direct benefit to the mine owners.

In order to operate any mining property it is necessary to have labor. It is not only necessary, but absolutely required, that labor be available to perform the required work in the successful operation of any mine. It is essential both to the miner and the mine owner that a permanent place of residence be established for the workman, and that he have

conveniences and sanitary surroundings for his own health and comfort, and likewise for the well-being of his family. In that regard the state is vitally interested.

The testimony is to the effect that Mammoth City has a water system for the distribution of water to its inhabitants—not a very extensive system, but nevertheless a water system; that street lights are furnished by the municipality; that the roads in the inhabited portion of the city are maintained and kept in repair from funds collected by taxes on property within the municipality and that at least some part of the public revenue is expended on other roads within the boundaries of the city. It appears also in the record that a school building is located within the boundaries of the municipality in which twelve teachers are employed. We are not to be understood as indicating that the school system is supported by municipal taxes. The schools, doubtless, are under the control and supervision of the county school board, as our statute provides it should be. These conveniences are essential and necessary for the health and welfare of any congregated community.

The property that may be acquired in a town such as Mammoth by those engaged in the daily work of mining of necessity must be of limited value, and the necessary revenue for the support of these public benefits to the inhabitants of the city could not be gathered from the limited property values located within the inhabited sections of the city.

Mammoth City, as the testimony shows, has a population of approximately 1,000 people. The interests of the mining companies, or rather the mines operated within the municipality, are so closely related and dependent upon the labor thus gathered together that they ought not and cannot in equity and justice, disclaim any interest in supporting these necessary conveniences.

It should be kept in mind that the boundaries of Mammoth City were and are an existing fact. It is in evidence that

its present boundaries were established at the time of the incorporation of the municipality. The burden therefore, is upon the petitioners to establish facts that warrant the court in decreeing a severance of the territory sought to be taken out of the city. By reason of the undisputed facts made to appear in this record, it is our judgment that the petitioners have not sustained that burden respecting the mining areas located in the northeastern part of the city decreed to be detached from the city by the judgment of the trial court. The areas sought to be detached, as shown on the map accompanying the petition, are known and designated as 1, 2, 3, 4, 5, and 6. The court in its decree disconnected areas described as 4, 5, and 6 and also a part of 2. The area designated 2 is located west of the inhabited portion of Mammoth City, and, so far as the record discloses there are no mines upon that area. Most of this area, if not what can be described as level land, is not of the same rugged mountainous character as the territory located in the eastern and northeastern part of the boundaries of the city on which the mines are located. The testimony is that on the area known as 2 there are located two railroad tracks, electric light poles and telephone poles, and a county highway. The highway extends north and south, and connects with the highway leading to the inhabited portions of Mammoth City. The court in its decree disconnected the western portion of area 2 from the boundaries of the city. Complaint is made by the appellant of that part of the decree, and it is strenuously insisted that the same reasons that induced the court to deny to the petitioners the right to have detached all of the area 2 compelled a denial of the right to have that part of 2 detached that the court by its decree did detach. We cannot agree with that contention. The area kept within the boundaries of the city is nearer the inhabited portion than that detached. There are two railroads on the part kept within the city. This area is near the city, and any dangers from brush fires originating on the area kept within the city

would much more likely result in damage to the city than brush fires originating upon the area detached. It does not appear that any of the property on the area detached had ever received any benefits from Mammoth City, unless it be the extinguishing of a few brush fires from time to time having broken out on that area. The area detached is some distance, probably two miles, from the inhabited portion of the city. The district court in its oral review of the case, in effect, said that the portion of the land decreed to be detached is so far removed from the inhabited portion of the city that it received no benefit, and was clearly unnecessary for city purposes, and for that reason it should be excluded.

As stated, Mammoth City has a population of approximately 1,000 people. It has not increased in population during the last seven or eight years, and there is nothing in the evidence to indicate that there will probably be an increase in population. It thus appears that there is no reason to anticipate that area 2 will be required for an extension of the residential portion of the city. We see no sufficient reason to disturb the court's judgment respecting that part of area 2 which was detached from the city by the order of the court.

The judgment of the court in severing areas 4, 5, and 6 will be reversed, and its judgment in all other respects affirmed.

The petitioners are corporations. The allegations that the petitioners authorized the filing of the petition for segregation of the territory was denied by the answer of the protestants. It is urgently insisted, both in this court and in the trial court, that the petitioners failed to establish that the officers filing the petition had any authorization from the respective corporations to file the same. Much of the brief of the appellant is devoted to this contention. In our judgment, and we have no doubt respecting the same, the petitioners will be concluded by any decree entered in this proceeding. If such be the fact, Mammoth City cannot com-

plain, and ought not to be heard to object to the lack of authority of those prosecuting the action.

The petitioners have filed cross-assignments of error. Their contention is that the court should have granted them additional relief. By reason of the conclusions we have reached, it becomes unnecessary to consider those errors.

The cause will be remanded to the district court of Juab county, with directions to recast its findings, conclusions, and judgment in conformity with the views herein expressed. The costs of this appeal will be evenly divided.

THURMAN, C. J., and STRAUP, J., concur.

HANSEN, J. (dissenting in part).

I am of the opinion that the judgment of the trial court should be affirmed in its entirety. We are all agreed that, if justice and equity required the disconnection from Mammoth City of the property which the trial court ordered disconnected, the judgment should be affirmed. Our difficulties arise when we try to agree upon what is justice and equity as applied to the facts in this case. The Legislature of Utah granted various enumerated powers to the commissioners and city councils of the cities within the state. The exercise of these powers is expected to result in benefits to the property within the territorial limits of the city. Thus the commissioners or city council, as the case may be, have power to establish and improve streets and sidewalks and regulate the use thereof. They have power to provide a water supply, gas works, electric light works, telephone lines, the building and repairing of sewers and drains, and for police and fire protection. When authorized so to do by the inhabitants, the city council of a third-class city such as Mammoth City has power to build and maintain a public library and gymnasium. They also possess various other powers not necessary to enumerate or consider in this proceeding.

When property owners seek to have their property disconnected from a city, under our laws, or laws similar thereto, inquiry in the adjudicated cases is directed toward the results based upon a determination of these propositions: Does the property sought to be excluded from the city receive any direct and special benefit resulting from the exercise of the powers granted to the city? Is it probable that the future growth and expansion of the city will require the territory sought to be disconnected? Is the property sought to be disconnected necessary for the use of the city? If the answers to these three propositions are all in the negative, it is quite generally, if not uniformly, held, and properly so, that equity and justice require that the request of the property owners be granted and the property disconnected from the city. It may be observed, however, that it has been held that, if the property sought to be disconnected destroys the symmetry of the boundaries of the city, such fact is sufficient reason for refusing to allow the exclusion of the territory. Such holding is not applicable here, because the boundaries of Mammoth City were not appreciably marred by the exclusion of the territory ordered by the trial court.

No claim is here made by Mammoth City that the property ordered disconnected by the trial court is necessary for the future growth or expansion of the city. Nor is it claimed that the territory ordered disconnected is necessary to serve any purpose of the city, except as a means of deriving revenue for the city. The trial court found that the property excluded is land that is "of rough, steep, mountainous character, and separated from the inhabited portion of Mammoth by the ridge or summit of a large hill or mountain which renders it impossible to serve such land with roads or to render it accessible from the inhabited portion of the city except by a detour of several miles around said hill or mountain. That none of said territory * * * has any human habitation thereon or any public improvements whatever." Upon the evidence, the trial court's findings in this respect could not be otherwise. All of the land excluded

is located in the northeastern corner of the territory constituting Mammoth City. The nearest point between the territory disconnected and the inhabited portion of Mammoth City in a straight line is approximately three-fourths of a mile. The excluded territory is from 1,000 to 1,300 feet higher than the inhabited portion of the city. The only appreciable value of the property excluded is the ore contained therein.

At the time these proceedings were begun Mammoth City had within its boundaries 2,880 acres of land, of which amount 127 acres were platted. All of the residential and business houses are located on the platted portion of the city, except about twenty residential houses, which are located very near the platted portion of the city. During the five-year period preceding the trial of this cause the population of Mammoth City increased slightly, but the number of buildings within the city materially decreased. The inhabited portion of the city has room for two and one-half times as many buildings as are now there located. If the city should grow and expand, in all human probability it will not be up the steep mountain side and over the summit, where the property excluded by the trial court is located.

If the trial court erred in excluding territory from Mammoth City, it is because the disconnected land received a benefit from the exercise of the powers conferred upon the city. Evidence was received that schools are maintained in Mammoth City. As schools are in no way maintained or controlled by the city government, it is difficult to see wherein such fact is material to the issues herein involved. The disconnected territory is assessed to pay for the maintenance of the schools in Juab county whether such schools are within or without the corporate limits of any city. Doubtless there were schools in what is now Mammoth City long before the city was incorporated, and it is certain that schools must be maintained to accommodate the children who reside within what is now Mammoth City so long as there is

need for such schools, regardless of whether the territory is or is not within any city. These schools do not receive any of the money derived from the taxes levied for city purposes, and are in no sense dependent upon the city government for their support.

Evidence was also offered tending to show that some of the men who are employed in mining ore from a part of the property excluded reside within Mammoth City. Just what materiality that fact has upon the issue involved in this proceeding is not clear. Certainly the city council cannot control or regulate an employer of labor as to whom he shall employ, nor can it direct the men who reside within the city for whom they shall work. If the basis of the right to tax the excluded property is the fact that the men who work upon such property reside in Mammoth City, then all the petitioners need do to have their property excluded is to employ only such men as reside elsewhere than within the corporate limits of Mammoth City. It would be strange doctrine to hold that, if an employer of labor desires to escape payment of taxes to a city, he must cease employing men who reside within such city. The evidence shows that some of the men who are employed upon the property excluded by the trial court reside at Eureka. There is no evidence showing, or tending to show, that any of the men who are employed on the excluded property would not continue to work upon this property if Mammoth City were disincorporated. I am of the opinion that the fact that some of the men who work in extracting ore from some of the property in question is immaterial, or, if material, it clearly cannot form any basis for holding within the city that portion of the excluded property which is not being, and never has been, worked at all.

It is also contended that there is an interlocking of the interests of the city of Mammoth with the surounding lands. This may be readily conceded. The same kind of interlocking of interests exists between the farm lands surround-

ing any of numerous cities within the state. There are many cities within this state that would cease to be if the surrounding farms were not worked, and many farms would doubtless suffer very substantially in value, if not become abandoned, if it were not for the nearby cities. I can see no reason why the same principles that this court has applied where farm lands have been excluded from a city should not apply to a case where mining property is likewise sought to be excluded. Thus, if the property sought to be excluded receives a direct and special benefit from the city, such as police and fire protection, or use of electric lights or water from the system of the city, or streets or sidewalks constructed near or abutting the property, or is so situated that drains or sewers may be connected with the property, then such property may properly be held within the city. On the contrary, the property should be disconnected from the city, unless it receives some of the benefits which the city commissioners or city council are empowered to give, and it may not be held within the city because it may receive some of the indirect and general benefits that go to all property situated near a city, unless the needs of the city or its probable future growth and expansion require the retention of the same.

Mammoth City maintains eighteen or nineteen street lights within the inhabited portion of the city. These lights cannot even be seen from the greater part of the property segregated, much less do they tend to develop the same. Mammoth City secures a water supply from a private corporation, but no claim is made that it will ever be able to furnish water to any of the excluded property. While Mammoth City maintains roads, none of these roads go within a distance of 3,000 feet in a straight line from the property segregated.

The evidence shows that Mammoth City has entered into a contract for the purchase of a gymnasium building, but if, perchance, any one should ever reside upon the segregated

property, it is quite probable that the exercise such person would receive in going to and from Mammoth City would dispense with the necessity of using the gymnasium.

The evidence in this case affirmatively shows that the segregated territory receives no direct benefit from Mammoth City. I am therefore clearly of the opinion that the trial court properly excluded from Mammoth City the territory indicated on plaintiffs' Exhibit H as tracts 4, 5, and 6 and part of the tract 2, as held in the prevailing opinion.

I concur in the results reached in the prevailing opinion that the respondents are not entitled to any relief upon their cross-assignments of error. Under the holding of this court in the case of *Fowers* v. *Lawson,* 56 Utah 420, 191 P. 227, the respondents should have cross-appealed, if they desired a different judgment than that rendered by the trial court.

CHERRY, J. I concur in the views expressed in the dissenting opinion.