Thord and Elva Nicholson and John and Irene Sty-
noski, Plaintiffs-Appellees, v. Village of Schaum-
burg Center, Defendant-Appellant.

**Gen. No. 48,375.**

First District, Third Division.
September 27, 1961.

Ancel, Siegel and Stonesifer of Chicago (Louis Ancel and Jack M. Siegel of Chicago, of counsel) for appellant.

Timothy J. Murtaugh and Martin M. Nelson of Chicago (Timothy J. Murtaugh, Martin M. Nelson and Francis E. Sweet, all of Chicago, of counsel) for appellees.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Defendant Village of Schaumburg Center appeals from an order granting the petition of plaintiffs for a disconnection of their property from the village. The principal question for our determination is whether plaintiffs are the owners of record of all the property sought to be disconnected, as required by the statute authorizing such proceedings. Ill Rev Stats c 24, § 7–42 (1959).

The case was tried under a stipulation of facts. The property was originally annexed to the village in 1958 at the request of plaintiff Thord Nicholson. Subsequent to the annexation, plaintiffs Thord and Elva Nicholson conveyed to the Northern Illinois Gas Company by warranty deed a portion of the property, being a strip of land approximately 83 feet wide and 4000 feet long, for the sum of $20,000. The conveyance was subject to a perpetual easement for access purposes. There was also reserved to the grantors, that is, the Nicholsons, their heirs, successors and assigns, "the right to farm the tract conveyed to the extent it does not interfere with the grantors operations." This was done by an unrecorded letter, written on the letterhead of the law offices of Righeimer and Righeimer, signed by Frank S. Righeimer, Jr., one of the partners, and addressed to one Martin M.

Nelson. The Northern Illinois Gas Company did not sign the petition for annexation.

It is plaintiffs' contention that the reservation of the easement and the right to farm the tract, as evidenced by the letter in question, is sufficient to make them owners of record within the meaning of the statute. It is defendant's position that while the Nicholsons may be considered to be owners of the property, they are not owners of record and are not the sole owners; that the Northern Illinois Gas Company is the owner of the fee; that its title is a *matter of record* in the office of the Recorder of Deeds for Cook County; that it is actually using and in possession of the property; that it pays all taxes thereon, and that it is therefore an owner of record and a necessary party to the petition.

█ The statute in question, which is the sole authority for this proceeding, reads as follows:

"Land disconnected by court procedure. The owner or owners of record of any area of land consisting of one or more tracts, lying within the corporate limits of any municipality, which (1) is not contiguous in whole or in part to any other municipality; (2) contains 20 or more acres; (3) is not subdivided into municipal lots and blocks; (4) is located on the border of the municipality; and (5) which, if disconnected, will not result in the isolation of any part of the municipality from the remainder of the municipality, may have the area disconnected as follows:

"The owner or owners of record of any such area of land shall file a petition in the county where the land is situated, alleging facts in support of the disconnection. . . . If the court finds that the allegations of the petition are true and that the area of land is entitled to disconnection

it shall order the specified land disconnected from the designated municipality."

Under that statute all the owners of record of land sought to be disconnected must sign the petition. There could be no other interpretation. This statute in fact superseded a previous statute which required only a majority. Ill Rev Stats c 24, § 377, 1925.

The issue turns on the construction of the phrase, "The owner or owners of record." What constitutes an owner or owners of land is not susceptible of precise definition. In Restatement of the Law we find the following:

> "§ 5(e). Complete Property. The totality of these rights, privileges, powers and immunities which it is legally possible for a person to have with regard to a given piece of land, that are other than those which all other members of society have as such, constitutes complete property in such land or thing other than land." Restatement of the Law, Property, Ch 1, § 5(e).

That is a good statement of total ownership, but it is qualified by the further statement that "[t]he owner may part with many of the rights, powers, privileges and immunities that constitute complete property, and his relationship to the thing is still termed ownership. . . ." (Ch 1, § 10(c).)

██ In 73 CJS, Property, § 13(b), at page 184, it is said:

> "Whether in a given case, one is an 'owner' will depend on particular circumstances and one having a particular estate or interest may be regarded as an owner for some purposes while not so regarded for others."

In determining its meaning as used in the statute, the nature of the act, the object sought to be accomplished,

200

and the purpose of the statute as a whole are taken into account. Woodward Governor Co. v. City of Loves Park, 335 Ill App 528, 535, 82 NE2d 387, 392; American Community Builders, Inc. v. City of Chicago Heights, 337 Ill App 263, 85 NE2d 837; Vance v. Rankin, 95 Ill App 562; In re: Smithfield City, 70 Utah 564, 262 P 105, 106; City of Phoenix v. State, 60 Ariz 369, 137 P2d 783, 786.

Plaintiffs argue that this is a remedial statute and that the courts have construed it with such liberality that the limited unrecorded interest of the Nicholsons is sufficient to bring them within the meaning of the term "owners of record," and they cite in support of their position Van Bebber v. Village of Scottville, 13 Ill App2d 458, 142 NE2d 711, 715; Wolbach v. Village of Flossmoor, 329 Ill App 528, 69 NE2d 704, 705; American Community Builders, Inc. v. City of Chicago Heights, 337 Ill App 263, 85 NE2d 837; Woodward Governor Co. v. City of Loves Park, 335 Ill App 528, 82 NE2d 387.

In Van Bebber v. Village of Scottville, supra, the only question involved was whether there was compliance with item (4) of the statute. A number of tracts had been joined in order to be disconnected although only two were on the border of the municipality. The court held that this was sufficient compliance. In Wolbach v. Village of Flossmoor, supra, the question was whether there was compliance with the provision of the statute (Item 1) requiring that the property sought to be disconnected should not be contiguous in whole or in part to any other municipality. The property in question touched the northeast corner of another municipality. The court held that this did not make it contiguous within the meaning of the act. In American Community Builders, Inc. v. City of Chicago Heights, supra, the court said that the purpose of the statute was "to permit property not being used

201

for city purposes at the time, to be disconnected from the municipality and the burdens of city taxation and regulations avoided." The case throws no light on the issue. We see nothing in these cases to support plaintiffs' position.

In Woodward Governor Co. v. City of Loves Park, supra, the court examined all these cases in depth and at length. The question there was whether the railroad company, whose title was an easement for use for railroad purposes, was an owner within the meaning of the statute. The court, with a realistic approach to the problem, considered that the railroad company had such an enduring right to the exclusive use and occupancy of the land that the title could be said to be complete. Undoubtedly what persuaded the court was the stability and permanence of railroad operation which made the reversion of little or no significance.

Plaintiffs also cite Vance v. Rankin, 95 Ill App 562, 565 (1901), a disconnection proceeding brought under a prior statute which authorized the owners of a majority of the area involved to petition for a disconnection. A railroad company having an easement for railroad purposes had signed as one of the owners. It also appears that two of the parties who had signed were not owners in fee simple. In a very short opinion the court said that it did not think the term "owner" as used in the Act of 1879 was confined to the holder of a fee simple title and did not think the legislature intended to close the door to tenants for life and all others holding estates less than a fee simple title. No consideration was given to the duration or extent of the respective interests. The decision was reversed by the Supreme court on appeal, 194 Ill 625, upon the ground that the Disconnection Act of 1879 had been repealed pending the appeal of that case without a saving clause as to pending suits.

202

In a much more closely reasoned opinion involving a proceeding for the creation of a drainage district the Supreme court of Illinois held that a life tenant could not be considered the "owner" for purposes of the statute. Warren v. Lower Salt Creek Drain. Dist., 316 Ill 345, 147 NE 248. In that case the act provided that a petition for a drainage district should be signed by a majority of all land owners and by those owning more than one-half in area. The question presented was whether the holder of a life estate was an owner within the meaning of the act. The court said that the word "owner" is nomen generalissimum; that its meaning when used in a statute is to be determined from the obvious nature and purpose of the statute; that while the meaning may vary according to context and subject matter, when applied to real estate without any qualifying words the word "owner" in common as well as legal parlance means an owner in fee simple. With respect to a life estate the court said, p 347:

> "But manifestly a life tenant is not the owner of all the land in which he owns a life estate. This being true, the signature of the life tenant does not by itself represent the land in which he holds the life estate. (Mayor of The City of Baltimore v. Boyd, 64 Md 10, 20 Atl 1028; Colquitt v. Stevens, 111 Ark 314, 163 SW 1141;) but where the life tenant and the person or persons in whom the fee is vested as remaindermen or reversioners sign the petition the lands are represented, and the full acreage may be counted in determining whether more than one-half in area of the lands is represented by the petitioners. (Hull v. Sangamon River Drain. Dist., 219 Ill 454, 76 NE 701.)"

The same reasoning would apply to a subsidiary interest such as the one here involved; that is to say,

both the Nicholsons and the Northern Illinois Gas Company should have joined in the petition.

The general principle gleaned from these cases is that the word "owner" is broad enough to include those having interests of substantial duration and extent; or to state the rule negatively, may exclude trivial and transient interests. In the instant case the land was originally annexed to the village only three years ago at the request of Thord Nicholson, one of the plaintiffs who now seek to have it disconnected after the part in question had been conveyed to the Northern Illinois Gas Company. We must treat the question as if the Gas Company had asserted its ownership, and in that view it cannot be doubted we would have sustained its position. Occasions may arise where there has been a compliance, albeit not a strict compliance, with the act. In such case the court might find the cases cited on the question of liberal or strict construction pertinent. That is not true in the instant case.

Here the owner of the fee and *the only owner of record* of the particular parcel in question has not signed the petition. Moreover, the owner of the fee is actively occupying the land. That occupancy is qualified only by an easement for access and the right to farm the surface of an area 4000 feet by 83 feet, approximately eight acres, *provided such farming does not interfere with the operation of the owner*. This right to farm is contained in an informal, unrecorded letter given by a lawyer to a third person evidently representing Thord and Elva Nicholson. It is fair to characterize the interests of the Nicholsons as insubstantial and uncertain when compared with the interest of the Northern Illinois Gas Company, whose rights are certain and enduring.

The village also raises the question of compliance with item (5) of the statute, which relates to a dis-

connection that isolates a part of the municipality. This involves the interpretation of the statute as to toll roads and other public highway occupancy. We do not deem it necessary to pass upon that question.

■ We conclude that the right of access and the unrecorded right to farm do not make plaintiffs Thord and Elva Nicholson the owners of record of the land in question to the exclusion of ownership in the Northern Illinois Gas Company, and that without the signature of that company the petition is not in compliance with the statute.

The order is reversed and the suit is dismissed.

Order reversed.

McCORMICK, P. J. and DEMPSEY, J., concur.