In the Matter of the DISCONNECTION OF TERRITORY AND RESTRICTION OF the CORPORATE LIMITS OF the CITY OF DRAPER, Utah.

Appeal of CITY OF DRAPER.

No. 17048.

Supreme Court of Utah.

April 27, 1982.

Hollis S. Hunt of Hunt, Larew & Kinateder, Salt Lake City, for appellant.

Dale F. Gardiner of Matheson, Jeppson & Gardiner, Salt Lake City, for respondents.

STEWART, Justice:

A petition for disconnection of certain land from the City of Draper was filed pursuant to Utah Code Ann., 1953, § 10–2–501 to 10–2–503, as amended in 1977. In a lengthy, thorough, and scholarly memorandum opinion, the trial court held that petitioners had met the statutory procedural and substantive requirements and entered a decree ordering disconnection. Draper City, appellant, seeks a reversal of the de-

cree, asserting that petitioners for disconnection failed to meet their burden of proof and that the governing statutory criteria require denial of the petition. We affirm the trial court.

In 1977, a petition to incorporate Draper City was filed with the Salt Lake County Recorder. The petition sought to incorporate in one municipality the area known as Draper, which is located on the east side of Interstate 15, and the area lying west of I–15, east of the Jordan River, north of the Salt Lake County boundary line, and south of 13800 South and 14600 South Streets. The territory on the west of I–15 is approximately two miles south of the community of Draper and separated from it by the I–15 right of way, a barrier of approximately 500 to 1000 feet.

The City of Draper was then incorporated in 1978. On July 12 of that year the residents of the area lying west of I–15 filed the petition to disconnect. That area consists of approximately 2,033 acres of mostly agricultural and uninhabited land. Approximately 26 families reside in the area. No municipal water or sewer systems exist either in Draper or in this area. Draper has not constructed any improvements in the area. Prior to Draper's incorporation, the residents of the area west of I–15 were considered part of the unincorporated community of Bluffdale, an area lying to the west. They went to church and belonged to social organizations in Bluffdale rather than Draper, purchased goods and services there, and sent their children to schools in communities lying west of the Jordan River.

■ In ruling on a petition for disconnection, the trial court's findings of fact will not be disturbed unless clearly erroneous. *Kennecott Copper Corp. v. City of Bingham Canyon*, 18 Utah 2d 60, 415 P.2d 209 (1966). The burden is on the appellant to demonstrate that the trial court committed error, and not that appellant should have won its case. We review the evidence, and the inferences arising therefrom to favor the trial court's findings of fact, *Ovard v. Cannon*, Utah, 600 P.2d 1246 (1979); *Rodgers v. Hansen*, Utah, 580 P.2d 233 (1978).

■ The trial court properly found that the procedural requirements set forth in § 10–2–501 were met.[1] The finding that the petition was signed by a majority of the registered voters, as required by § 10–2–502, is supported by the evidence. There was adequate evidence to support the finding that the signatures on the petition were authentic and that the persons who signed the petition constituted a majority of the registered voters. The parties had stipulated to the accuracy of an affidavit to that effect; the stipulation constituted competent and sufficient evidence. *Cf. McCune v. City of Phoenix*, 83 Ariz. 98, 317 P.2d 537 (1957).

■ The substantive criteria for determining whether a disconnection should be ordered are set out in Utah Code Ann., 1953, § 10–2–502 and § 10–2–503. The former provides that a decree of disconnection should be granted if required by "justice and equity."[2] Whether the general stan-

---

1. Section 10–2–501 provides:

Disconnection by petition to district court. A majority of the real property owners in any territory within and lying on the borders of any incorporated municipality may file with the clerk of the district court of the county in which the territory lies a petition praying that the territory be disconnected therefrom. The petition shall:

(1) Set forth reasons why the territory should be disconnected from the municipality; and

(2) Be accompanied with map or plat of the territory sought to be disconnected; and

(3) Designate not more than five persons who are empowered to act for the petitioners in the proceedings. . . .

2. Section 10–2–502 provides:

Court commissioners to adjust terms—Criteria. If the district court finds that the petition was signed by a majority of the registered voters of the territory concerned and that the allegations of the petition are true and that justice of the petition are true and that justice and equity require the territory or any part thereof to be disconnected from the municipality, it shall appoint three disinterested persons as commissioners to determine . . . .

dard of "justice and equity" has been met in a particular case turns in large measure on the facts. *In re Chief Consolidated Mining Co.*, 71 Utah 430, 266 P. 1044 (1928). The varied circumstances of each disconnection case do not allow for exact and clearcut criteria. However, the Legislature in § 10–2–503 has established more specific criteria which are relevant in determining whether a disconnection would be consistent with justice and equity and sound principles of city planning. That section provides:

> 10–2–503. Criteria for disconnection. The court for the purposes of determining whether or not territory should be disconnected shall consider whether or not disconnection will leave the municipality with a residual area within its boundaries for which the cost, requirements, or other burdens of municipal services would materially increase over previous years or for which it would become economically or practically unreasonable to administer as a municipality. The court shall consider, among other factors, the effect of the disconnection on existing or projected streets or public ways, water mains and water services, sewer mains and sewer services, law enforcement, zoning and other municipal services and whether or not the disconnection will result in islands or unreasonably large or varied-shaped peninsular land masses within or projecting into the boundaries of the municipality from which the territory is to be disconnected.

Numerous cases have applied these factors in determining whether disconnection should be granted. In *Kennecott Copper Corp. v. City of Bingham Canyon*, 18 Utah 2d 60, 415 P.2d 209 (1966), the Court examined the extent of special benefits the disconnected area would lose as a result of the disconnection and the effect of disconnection upon the present and future needs of the municipality opposing the severance. See also *Howard v. Town of North Salt Lake*, 7 Utah 2d 278, 323 P.2d 261 (1958); *In re Chief Consolidated Mining Co.*, 71 Utah 430, 266 P. 1044 (1928); *In re Smithfield City*, 70 Utah 564, 262 P. 105 (1927); *Young v. Salt Lake City*, 24 Utah 321, 67 P. 1066 (1902).

■ In *In re Layton City*, 27 Utah 2d 241, 494 P.2d 948 (1972), this Court, in affirming an order of disconnection, relied on the following factors: the absence of improvements or buildings in an agricultural territory; the absence of city-provided water, garbage service, sewer system, and streets; and the remoteness of a city water line. The Court also relied on the fact that the city would not suffer a substantial loss of tax revenue and that its municipal functions would not, in any substantial way, be adversely affected or impaired by disconnection. In *Howard v. Town of North Salt Lake, supra,* the Court relied on evidence that the area to be disconnected would not be required for the future expansion of the town and would not receive any substantial benefits from the town. There was also an absence of a close relationship between the industrial concerns of the two areas.

These cases provide adequate guidelines in the instant case. The territory to be disconnected is wholly agricultural in nature. Draper does not have a municipal sewer system, nor is it likely that it will acquire one. There is no municipal water system within the City of Draper, and no negotiations have occurred for the purchase of a water system. There have been no municipal improvements within the area to be disconnected. There is no substantial economic relationship between Draper and the area to be disconnected. Draper City provides minimal police and fire protection. When fires have occurred in the area to be disconnected, the Draper fire department was usually the last to respond. The road repair services furnished by the county prior to the incorporation of Draper were superior to that of Draper. There is an absence of common social, economic, and geographic interests between the area to be disconnected and Draper.

■ There is no evidence that Draper City will be prejudiced other than by the loss of property taxes. The disconnection will not create islands or peninsulas which would leave the municipality with a residu-

al area that would have the effect of increasing the cost of providing municipal services to disproportionately high or unreasonable levels. The record also shows that there is ample room for growth and development of Draper without the territory to be disconnected.

We conclude that it is in the interest of justice and equity for the disconnection to be allowed.

Affirmed. No costs.

HALL, C. J., and OAKS, HOWE and DURHAM, JJ., concur.