In the Matter of the DISCONNECTION OF CERTAIN TERRITORY FROM HIGHLAND CITY.

No. 18191.

Supreme Court of Utah.

July 12, 1983.

Vernon B. Romney, Salt Lake City, for appellant.

Bryce E. Roe, Salt Lake City, John C. Backlund, Provo, for respondent.

OAKS, Justice:

This is an appeal from an order of disconnection. Appellant Highland City (also known as Highland Town) seeks a new trial, arguing that the district court erred in (1) holding that justice and equity require

disconnection; (2) failing to consider all the evidence produced at trial; and (3) refusing either to amend its findings and the order of disconnection or to grant the City a new trial on newly discovered evidence. (4) Additionally, the City contends in oral argument that statutory amendments enacted after the district court's decision apply retroactively and require a new trial.

Appellant Highland City is a third-class city, located in northern Utah County between Alpine on the north and American Fork on the south. It contains a total of approximately 2,142 acres, including the 131-acre area contested here.

The disputed acreage forms a rectangular peninsula extending east of the main part of the City. This petition to disconnect was filed June 2, 1978, by the owners of the 131 acres: Gibbons Realty Company, Utah Power and Light Company, and various members of the Hayes family. Gibbons Realty Company, which owns or controls most of this property, had made known its intention to begin sand and gravel extraction and to establish a concrete products plant on its property if the area were disconnected and returned to county control. The City opposed the petition, largely because of its residents' fears that such operations would seriously threaten their quality of life.

The district court took evidence at trial on February 11 and 29, 1980, and entered a memorandum decision on August 28, 1980, that the area should be disconnected. A commission was then appointed in accordance with U.C.A., 1953, § 10–2–502, which conducted a public hearing. After receiving the commissioners' report, the district court entered an order on November 4, 1981, granting the petition to disconnect. After denial of its motion for a new trial or amended judgment, the City took this appeal.

1. *Justice and equity.* The statutes governing disconnection provide that a district court may order land disconnected from a municipality if it finds "[1] that the petition [for disconnection] was signed by a majority

of the registered voters of the territory concerned and [2] that the allegations of the petition are true and [3] that justice and equity require the territory . . . to be disconnected from the municipality . . . ." § 10–2–502.

The first two requirements are undisputed: no registered voters (nor any other persons) reside in the territory concerned, the petitioners constitute all of the owners of the property in the territory and are therefore entitled to file a petition for disconnection, § 10–2–501, and the City does not challenge the district court's finding that the allegations in the petition are true. However, the City does contend that the district court erred in concluding that justice and equity require disconnection.

■■■ The determination of what constitutes "justice and equity" turns on the facts of each individual case. Once the district court has ruled on a petition for disconnection, its findings will not be disturbed unless clearly erroneous. *In re Disconnection of Territory and Restriction of the Corporate Limits of Draper,* Utah, 646 P.2d 699, 701 (1982); *Continental Bank & Trust Co. v. Farmington City,* Utah, 599 P.2d 1242, 1247 (1979). We have concluded that the findings in this case are not clearly erroneous.

The entire area is vacant and unimproved except for lights, a pond, and picnic areas. The only roads in the area are two highways maintained by the state and some private roads built and maintained by the property owners. The City has zoned the area as residential property, but none has been used for that purpose. There are no sidewalks and no subdivisions platted on the City map. Although City authorities testified that the City wanted to use the area as a park or cemetery, no master plan had officially set it aside for such uses.

The district court found that there were no publicly owned and operated water mains or water services in the disputed area; the City has no water system. At the time this proceeding was commenced, the City had no sewer system. The City subse-

quently tied into a regional sewer system, which, at the time of trial, served an elementary school and some homes from a trunk line on the western side of the City, remote from the contested area. No lateral sewer connections had been extended into the contested area, and there were no plans to do so.

The district court found that law enforcement would be the same whether the contested area was part of the county or part of the City and that disconnection would not burden the City with any added expense for law enforcement. (The City has no police force of its own but contracts with the Utah County Sheriff and his deputies to serve as the city marshall and assistant marshalls.) The court found that disconnection would reduce the City's expense for fire protection by eliminating its contractual obligation for the contested area. (The City has no fire department, but obtains fire protection under contract with Alpine City.) The City provides no garbage disposal; the residents receive this service by contract with a private company.

Although disconnection would remove the contested area from the City's zoning authority and place it under the aegis of the county, the district court found that zoning restrictions on the property would remain essentially the same. Finally, the district court found that disconnection would create no islands or peninsulas within the City's boundaries that would make it more expensive or difficult to provide municipal services to the area remaining after disconnection.

Being supported by sufficient evidence in the record, none of these findings was clearly erroneous. In total, they provide an ample basis for the district court's conclusion that "justice and equity" required the disputed territory to be disconnected from the municipality.

2. *Evidence of quality of life.* Many witnesses for the City testified that they were opposed to further industrialization of the City[1] and that if the contested area

---

1. An existing operation within the City extract- ed about 200,000 tons of ash rock annually.

were disconnected and used for sand and gravel extraction, the quality of the City's air and water would be reduced, noise and dust would increase, property values would be threatened, and the residents' lifestyles would be damaged. Witnesses for neighboring intervenor cities testified that their cities would also be adversely affected. The City's mayor testified concerning various uses the City intended to make of the disputed area in the future, including a park and a cemetery, a sewer line, a water tower, and a holding pond. He also stated that if the area were disconnected, it would be difficult for the City to protect the peace, health, and safety of its residents.

The district court heard all of this evidence, but concluded that much of it was irrelevant to a determination of whether disconnection should be granted. The court ruled that "the only evidence legally relevant in these proceedings is that which relates to the criteria for disconnection as set forth [in Section] 10–2–503." The City terms this an erroneous ruling that can only be corrected by a new trial.

Historically, the only statutory criteria for disconnection of territory from a municipality was that it be required by "justice and equity." U.C.A., 1953, § 10–4–2 (now codified at § 10–2–502 (Supp.1981)). Decisions interpreting that standard have uniformly turned on what municipal services, improvements, or other benefits the territory received from the city; the tax base and revenue the territory provided to the city and the financial impact of its loss by disconnection; the effect of disconnection on the city's continued growth, financial health, and administration; and the economic interdependency of the city and the territory. *In re Disconnection of Territory from Layton City,* 27 Utah 2d 241, 494 P.2d 948 (1972); *Kennecott Copper Corp. v. City of Bingham Canyon,* 18 Utah 2d 60, 415 P.2d 209 (1966); *Howard v. Town of North Salt Lake,* 7 Utah 2d 278, 323 P.2d 261 (1958); *In re Peterson,* 92 Utah 212, 215–16, 66 P.2d 1195, 1197 (1937); *In re Chief Consolidated Mining Co.,* 71 Utah 430, 266 P. 1044 (1928) (denying disconnection); *Christensen v. Town of Clearfield,* 66 Utah 455,

243 P. 376 (1926); *In re Fullmer,* 33 Utah 43, 45–46, 92 P. 768, 768–69 (1907); *Young v. Salt Lake City,* 24 Utah 321, 327, 67 P. 1066, 1066 (1902).

In 1971, the Legislature enacted specific economic and practical criteria to be applied by the courts in making determinations relating to disconnection of areas from municipal corporate limits. Disconnection of Territory from Municipalities, ch. 10, 1971 Utah Laws 26. We have held that these criteria, which (as slightly amended in 1977) appear in § 10–2–503, "are relevant in determining whether a disconnection would be consistent with justice and equity and sound principles of city planning." *In re Disconnection of Territory and Restriction of the Corporate Limits of Draper,* 646 P.2d at 702. In the present case, the district court interpreted these statutory criteria (which are consistent with the economic and practical criteria specified in the earlier cases cited above) as constituting, in effect, an exhaustive definition of the "justice and equity" standard specified in § 10–2–502. That interpretation is consistent with our application of the statute in cases decided since its adoption. *Id.; Continental Bank & Trust Co. v. Farmington City, supra.*

In opposition, the City relies on the statutory language that requires the district court to consider the effect of disconnection on various municipal services, "among other factors." § 10–2–503. The City contends that the concerns and desires of its residents for their lifestyle constitute such "other factors," which the district court was therefore required to consider in making its decision.

 We have often stated that in interpreting statutory language, "care must be taken to construe the words used in light of the total context of the legislation." *Cannon v. McDonald,* Utah, 615 P.2d 1268, 1270 (1980); *Crist v. Bishop,* Utah, 520 P.2d 196, 198 (1974). *See also Osuala v. Aetna Life & Casualty,* Utah, 608 P.2d 242, 243 (1980). Where general language such as "other factors" is used together with specific words like the list of municipal services

contained in § 10–2–503, familiar rules of construction (*noscitur a sociis,* "it is known from its associates," and *ejusdem generis,* "of the same kind") require that the general words be restricted to a sense analogous to the specific words. *Lark v. Whitehead,* 28 Utah 2d 343, 345, 502 P.2d 557, 559 (1972); *Heathman v. Giles,* 13 Utah 2d 368, 369–70, 374 P.2d 839, 840 (1962); Sutherland, 2A *Statutes and Statutory Construction* §§ 47.16, 47.17 (C. Sands 4th ed. 1973); 82 C.J.S. *Statutes* §§ 331, 332 (1953). Hence, the "other factors" the district court is required to consider under § 10–2–503 are those factors bearing on the city's ability to continue to provide services to the residual area akin to those specifically listed or on considerations related to that ability, such as tax base, tax revenue, and irregular city boundaries.

■ This interpretation is not contrary to the direction that the officers of the municipality or any interested person "may appear before the court and contest the granting of the petition for disconnection by presenting the evidence as they deem relevant." § 10–2–501. This statute merely assures that all points of view will be fully heard on the question of disconnection and that the court will have unrestricted access to any and all information which may possibly bear on the statutory criteria it is required to apply. But, having received the widest possible range of evidence, the court must nevertheless reach its decision on the basis of the considerations the statute makes relevant to disconnection proceedings.[2]

3. *Retroactivity of recent legislation.* In any event, the City argues, the district court's decision was erroneous because of amendments to §§ 10–2–501 and 10–2–503 passed in the 1983 General Legislative Session. House Bill 88, titled "An Act … Providing for a Burden of Proof and Additional Criteria in Hearings for Disconnection of Territory from a Municipality," add-

ed the underscored language, so these sections now read in pertinent part as follows:

10–2–501. … The question of disconnection shall be tried before the district court in the same manner as civil cases are tried. … <u>The burden of proof in disconnection proceedings is on the petitioner and is by a preponderance of the evidence.</u>

10–2–503. … The court shall consider [among other] <u>all relevant</u> factors <u>including, but not limited to,</u> the effects of the disconnection on <u>the following: the city or community as a whole, adjoining property owners,</u> existing or projected streets or public ways, water mains and water services, sewer mains and sewer services, law enforcement, zoning and other municipal services and whether or not the disconnection will result in islands or unreasonably large or varied-shaped peninsular land masses within or projecting into the boundaries of the municipality from which the territory is to be disconnected.

■ These amendments, which appear to have some relationship to this litigation,[3] became effective May 1983, eighteen months after the decision challenged in this appeal. Nevertheless, the City argues that the amendments apply retroactively and require a new trial. It relies on *Okland Construction Co. v. Industrial Commission,* Utah, 520 P.2d 208, 210–11 (1974), in which we stated that the judicial policy against retroactive laws "has no application where the later statute or amendment deals only with clarification or amplification as to how the law should have been understood prior to its enactment." However, the amendments in this case do not merely "clarify" or "amplify" how the earlier law should have been understood. They alter the substantive law governing disconnection by creating new factors the district court must consider in making its decision. The

---

**2.** Residents' concerns for their health, safety, property values, and quality of life can be pursued through the zoning powers conferred on cities and counties. *See* §§ 10–9–1 to –18; §§ 17–27–1 to –27.

**3.** The bill was sponsored by Representative Donald R. LeBaron, who, at the time of the proceedings challenged here, was also serving as mayor of Highland City.

amendments constitute a fundamental change in the substantive law on which both sides relied in preparing and presenting their cases and which the district court applied in reaching its decision. As we said of a similar amendment in *In re J.P.,* Utah, 648 P.2d 1364, 1370 n. 4 (1982), "Changes of this magnitude do not fit within the relatively narrow exception" illustrated by the *Okland Construction* case. Nor is this a case like *Pilcher v. State Department of Social Services,* Utah, 663 P.2d 450 (1983), or *State Department of Social Services v. Higgs,* Utah, 656 P.2d 998 (1982), or the cases they cite, where "a statute changes only procedural law by providing a different mode or form of procedure for enforcing substantive rights." *Pilcher,* 663 P.2d at 455. Here, the amendment dealt with the substantive rights of the parties because it changed the substantive criteria for decision.

"The well-established general rule is that statutes not expressly retroactive should only be applied prospectively." *In re J.P.,* 648 P.2d at 1369 n. 4, and authorities cited; U.C.A., 1953, § 68–3–3; 73 Am.Jur.2d *Statutes* § 349 (1974). There being no provision to the contrary in this circumstance and the amendment being substantive rather than procedural, the general rule governs, and the 1983 amendments do not apply to this case.

4. *Newly discovered evidence.* Finally, the City contends that the district court erred in refusing either to amend its findings and the order of disconnection or to grant a new trial on the basis of newly discovered evidence of the City's annexation of property adjoining the contested area.

On September 17, 1981, over a year after the court's decision that the area should be disconnected, the City advised the court that it had annexed the "Kjar property." This property, which contained approximately 80 acres, adjoined the disconnected property on the east, forming a further extension of that same peninsula. When the district court entered its findings of fact and conclusions of law and its final order of disconnection on November 4, 1981, on the basis of the evidence at trial and the commission's report, the court did not mention the annexation of the Kjar property. Claiming "newly discovered evidence," the City then moved for a new trial or an amended judgment under Utah R.Civ.P. 59(a)(4) in order to present evidence of its changed boundaries. The City contended that, after the Kjar annexation, disconnection of the disputed area would leave the Kjar property as an island, completely separated from the rest of the City. The motion for new trial was denied.

■ To be entitled to a new trial or an amended order under Utah R.Civ.P. 59(a)(4), the movant must show "[n]ewly discovered evidence . . . which he could not, with reasonable diligence, have discovered and produced at the trial." The City's motion did not meet this requirement.[4]

■ Newly discovered evidence must relate to facts which were "in existence at the time of the trial." *Campbell v. American Foreign S.S. Corp.,* 116 F.2d 926, 928 (2d Cir.1941). A motion for a new trial or amended judgment cannot be based on facts occurring subsequent to trial. *Patrick v. Sedwick,* Alaska, 413 P.2d 169, 177 (1966); *City and County of Honolulu v. Ambler,* 1 Hawaii App. 589, 592, 623 P.2d 92, 94 (1981); *Fox v. First Western Savings & Loan Association,* 86 Nev. 469, 473–74, 470 P.2d 424, 427 (1970); *Sullivan v. Hoffman,* 207 Neb. 166, 173, 296 N.W.2d 707, 712 (1980). If the rule were otherwise, there would be no end to litigation. *Campbell v. American Foreign S.S. Corp., supra; Rogers v. Ogg,* 101 Ariz. 161, 416 P.2d 594 (1966); *In re Monson,* 180 Neb. 818, 823, 146 N.W.2d 198, 201 (1966).

---

**4.** Our decision on this requirement makes it unnecessary to discuss other requirements under rule 59(a)(4), such as that the evidence "be of sufficient substance that there is a reasona-

ble likelihood that with it there would have been a different result." *Gregerson v. Jensen,* Utah, 617 P.2d 369, 372 (1980).

In this case, the annexation of the Kjar property was a fact that occurred and was submitted to the district court over a year after trial and entry of the memorandum decision of disconnection. The court's refusal to grant a new trial or reopen and amend its judgment on that basis was not such "a manifest abuse of discretion" as to require reversal. *Doty v. Town of Cedar Hills,* Utah, 656 P.2d 993, 995 (1982); *Schmidt v. Intermountain Health Care, Inc.,* Utah, 635 P.2d 99, 101 (1981).

Judgment affirmed. Costs to respondents.

HALL, C.J., and HOWE and DURHAM, JJ., concur.

STEWART, Justice: (concurring)

I concur in the majority opinion in all respects. However, I think it important to add one additional observation.

U.C.A., 1953, § 10–2–502 requires that a petition for disconnection be signed by a majority of the registered voters in the territory to be disconnected. In the instant case, the area to be disconnected was not inhabited, and the petition was not signed by any registered voter of the area in question. For that reason, it would appear to me that the petition for disconnection was probably not valid on its face. I make this point simply because in my view it is important that the disconnection statute be construed to support sound principles of city planning. The requirement that the petition be signed by a majority of registered voters who live in the area was no doubt intended to prevent absentee landowners from seeking to circumvent city planning and zoning laws by having odd chunks of land disconnected from the city.

In the instant case, however, the appellant has failed to raise the issue on appeal, and pursuant to the accepted standards of judicial review, that issue is not before us.