GEORGE W. FOX, APPELLANT, *v.* FIRST WESTERN SAVINGS AND LOAN ASSOCIATION, RESPONDENT.

FIRST NATIONAL BANK OF NEVADA, INTERVENOR–APPELLANT, *v.* GEORGE W. FOX AND FIRST WESTERN SAVINGS AND LOAN ASSOCIATION, RESPONDENTS.

No. 6093

June 11, 1970                                    470 P.2d 424

*Daryl Engebregson,* of Las Vegas, for George W. Fox.

*Brown & Matteucci,* of Las Vegas, for First National Bank of Nevada.

*Dickerson, Miles & Gang, Ltd.,* of Las Vegas, for First Western Savings and Loan Association.

**OPINION**

By the Court, ZENOFF, J.:

H & H Investment Corporation through one of its principals, George Fox, borrowed $1,187,800 from First Western Savings and Loan Association to construct 62 homes on the Capitol Hills Tract subdivision in Clark County. In order that they be in a priority position First Western required that two

debts be cleared before the loan would be made. To accomplish that Fox arranged that a $40,000 debt be paid in cash from the loan funds but the other, for $59,700, secured by first deed of trust to the property, was to be liquidated by an assignment from H & H to the First National Bank of Nevada from the funds in return for which the bank executed a reconveyance of the deed of trust. Fox and his associate, Hebard, had also personally guaranteed the bank obligation.

This dispute arose over the interpretation of that assignment. Fox contends the $59,700 was payable when 31 homes were constructed together with off-site improvements to the remaining 31 lots, and notices of completion filed, while First Western claims the money was not due until notices of completion were filed on the construction of all 62 homes.

The trial court found in favor of First Western who had refused to pay the $59,700 when the 31 homes and all of the off-site improvements were completed.

1. Fox did all of the negotiating for the construction loan with First Western. The bank and First Western did not discuss with each other the terms of the assignment. Whatever representations made to the bank concerning the number of homes to be completed were by Fox.

At the time of the making of the loan H. D. Fletcher, Vice President of First Western, was in charge of the construction loan transaction with Fox. Later Fletcher became an executive with the First National Bank, a position he held at the time of trial. Fletcher had executed with H & H a letter of commitment which in its bare essentials provided that:

1. The loan of $1,187,800 was for the purpose of building 62 residences on Capitol Hills Tract No. 1.

2. Advances would be permitted for the construction of 31 of the houses but thereafter further advances for the remainder would be subject to favorable sales factors as determined by First Western.

3. The loan was repayable in one year.

A basic building loan agreement was signed on the same day by the same parties. It specified that 62 single family residences would be constructed on the property.

The commitment agreement and the loan agreement were dated October 14, 1963. On November 1, 1963 Fox delivered to First Western an assignment of $59,700 from the loan fund to the First National Bank of Nevada wherein was stated, "We understand that these funds will not be available until 35 days after the notice of completion has been recorded

on *said* tract. . . ." The bank upon notification of the assignment released or reconveyed the first trust deed on the property which had secured the indebtedness due them from Fox and Hebard. A further part of the understanding between Fox and the bank was that the bank would receive $15,000 from the loan funds upon recordation of the assignment with the $59,-700 to be paid upon completion of the tract. The $15,000 payment was made.

Thirty-one houses were completed together with off-site improvements on the remaining lots whereupon Fox made demand for payment of the assignment, but was refused. He commenced this action and the bank intervened. Fox's testimony was ruled out because of various inconsistencies and from our review we discern his apparent attempts at self help at the expense of the truth. Other witnesses testified to a variety of memoranda and inner office procedures, but significant oral testimony was provided by Fletcher who testified that he never intended nor did he convey the impression to Fox or anyone else that the assignment would be payable other than when the entire tract was completed.

The physical evidence also supports the findings of the trial court that 62 homes were contemplated before the assignment would be paid. Not only the building loan agreement and the letter of commitment referred to 62 homes but the escrow statement specifically provided for 62 notices of completion and all of the internal office controls of First Western related to 62 homes, not 31. The subcontractors' bids to Fox were on the basis of 62 dwellings. Certain memoranda of one of the bank's employees refer to payment upon the completion of 62 homes. Whatever conflict exists from the evidence was created by Fox whose personal interest in getting the assignment liquidated was sparked by his personal liability to the bank that it would be. He intended that the money would be available after the sale of the 62 homes but the bank's impression was that the money would be received after completion of 31 homes.

As the trier of fact the trial court had the right to consider the credibility of witnesses and disbelieve testimony, even though uncontradicted. Douglas Spencer v. Las Vegas Sun, 84 Nev. 279, 439 P.2d 473 (1968). Nor will this court substitute an appellant's construction of the facts for the meaning given them by the trial judge. Ray Motor Lodge, Inc. v. Shatz, 80 Nev. 114, 390 P.2d 42 (1964). It is not our function to substitute our view for that of the trial court. Richfield

Oil Corp. v. Harbor Ins. Co., 85 Nev. 185, 452 P.2d 462 (1969); Lanigir v. Arden, 82 Nev. 28, 409 P.2d 891 (1966). The findings of the trial court will only be reversed where there is not substantial evidence to support them. LeMon v. Landers, 81 Nev. 329, 402 P.2d 648 (1965); Bird v. Mason, 77 Nev. 460, 366 P.2d 338 (1961).

When a contract is in any of its terms or provisions ambiguous or uncertain it is primarily the duty of the trial court to construe it after a full opportunity is afforded all the parties in the case to produce evidence of the facts, circumstances and conditions surrounding its execution and the conduct of the parties thereto. Beneficial Fire & Cas. Ins. Co. v. Kurt Hitke & Co., 297 P.2d 428 (Cal. 1956). The exhibits could in some respects be rationalized as to call for the construction of 31 homes, not 62, but the controlling weight is not necessarily placed upon those exhibits. The court can use both words and actions to interpret the contract. Reno Club, Inc. v. Young Investment Co., 64 Nev. 312, 328, 182 P.2d 1011 (1947). The oral testimony of Fletcher alone is enough to support the findings of the trial court in this case and the physical evidence lends sufficient weight to justify the construction of the agreement as resolved by the trial court.

2. After the trial First National Bank and Fox moved for a new trial based upon newly discovered evidence, the newly discovered evidence consisting of notices of completion filed by First Western on houses constructed on the Capitol Hill Tract after the trial was concluded. The motion of First National Bank was denied by the trial court for failure to be filed within ten days as required by Rule 59(b). Fox's motion was denied on the merits in that nothing presented would alter the trial court's decision.

After commencement of this appeal Fox then moved this court to supplement the record to include the additional notices of completion which had been filed by First Western subsequent to the trial making a total in all of 60 homes completed. Absent opposition from First Western this court granted the motion. Appellant Fox and the bank insist that First Western is being unjustly enriched by being allowed to keep the property, not pay off the assignment to the bank and receive the proceeds of the 60 homes completed, plus the two lots with off-site improvements.

The evidence cannot be considered newly discovered for

that definition refers to evidence of facts existing at the time of trial, not facts occurring subsequent to trial. State of Washington v. United States, 214 F.2d 33, 46 (9th Cir. 1954); Campbell v. American Foreign S. S. Corp., 116 F.2d 926 (2nd Cir. 1941). Nor can we consider them with the view to granting a new trial or reversing the judgment of the trial court. The additional evidence creates problems separate and distinct from those raised as issues in this case. So far this record shows First Western never received the payment on the note for $1,187,800 and we can only conjecture that steps may have been taken by them to get return of their money. Whatever may have happened later is not before the court now, and their final resolution is not necessarily foreclosed by this decision.

Affirmed.

COLLINS, C. J., BATJER, MOWBRAY, and THOMPSON, JJ., concur.