19106

TOWN OF HONEA PATH, S. C., Respondent, v. J. T. FLYNN, Appellant

(176 S. E. (2d) 564)

*Messrs. Harvey G. Sanders, Jr.* and *Duke K. McCall, Jr., of Leatherwood, Walker, Todd & Mann,* of Greenville, *for Appellant,*

*Messrs. Daniel R. McLeod, Attorney General,* and *E. N. Brandon, Assistant Attorney General,* of Columbia, *for Respondent,*

September 18, 1970.

BUSSEY, Justice.

The appellant Flynn was charged with the violation of two penal ordinances of the Town of Honea Path, tried before the City Recorder and a jury, convicted and sentenced. An appeal to the Court of General Sessions for Anderson County on numerous exceptions availed him nothing and he now appeals to this Court.

The charges against the appellant arose out of the following facts. During the early morning hours of August 17, 1965, in the Town of Honea Path, there was a collision

between a P & N Railroad train and a tractor-trailer unit operated by Overnite Transportation Company. The trailer involved had been picked up by Overnite from a connecting carrier in Richmond, Virginia, and contained a sealed shipment moving in interstate commerce. The appellant, an independent adjuster who from time to time investigated accidents for Overnite and/or its insurer, was called to the scene by Overnite and arrived there at approximately 5 A. M. He commenced his investigation, taking pictures, measurements, interviewing witnesses, etc. The trailer was virtually cut in half by the impact with the train and its cargo dumped upon the street. Such cargo consisted primarily of heavy machinery, but there was also contained a rusty old freezer in which there were a number of bottles and jugs, which the respondent contends contained alcoholic beverages. Everyone around the scene, including the appellant Flynn, assumed that the contents were alcoholic and, for the purpose of this appeal, we shall do the same, although it is conceded there was no definite proof of the actual contents.

There were seven quart bottles and four gallon jugs, which Flynn, with the assistance of one or more bystanders, placed in the trunk of his automobile which was parked a few feet away. At the time, there were two city policemen on the scene directing traffic. One of them, Officer Cannon, engaged in a conversation with Flynn about the bottles, and, according to him, Flynn said that if the bottles were a matter for anybody, such would be a matter for the federal or state people. According to Flynn, his position was that the bottles constituted a matter for the Interstate Commerce Commission since the presence of such in the trailer was a violation of ICC regulations. In any event, Officer Cannon was not certain as to what, if anything, he should do and called the Sheriff's Department of Anderson County for advice; he also requested Chief Cooley of Honea Path to come to the scene. Chief Cooley arrived some twenty or twenty-five minutes after the bottles had been placed in the trunk of the Flynn automobile and requested that he be allowed to look in the trunk, with which request Flynn complied.

The bottles and jugs bore labels and Federal Tax Stamps, but there naturally were no South Carolina Tax Stamps on any of them since they were in a sealed shipment moving in interstate commerce. While neither Officer Cannon nor Chief Cooley knew Flynn's identity precisely, they both admittedly knew that he was an investigator upon the scene performing his duty of investigating the accident, protecting the remains of the cargo, etc. There are some fairly sharp conflicts in the evidence as to precisely what was said and done by the principals immediately following the view of the bottles by Chief Cooley, but despite the conflicts, certain obvious facts emerge under any view of the evidence. Flynn was of the view that under the circumstances the bottles were no concern of the local police authorities, but that such constituted a matter for the Interstate Commerce Commission. Chief Cooley was strongly of the view that in the Town of Honea Path he was supreme in law enforcement and should yield nothing to any other authority, state or federal. He resented even a suggestion of challenge to his authority. He admitted that he lost his temper but claimed that he didn't get as mad as Flynn did. Undisputed facts are that in the course of the disagreement Flynn was arrested by Chief Cooley, who put an arm around Flynn's neck and there was some struggling by Flynn, whether for the purpose of trying to get breath as he contended, or for the purpose of resisting as contended by Cooley. The arrest occurred at a few minutes after 7 o'clock in the morning and, at approximately 10:30 or 11 o'clock A. M. he was formally charged with the violation of the two ordinances of the Town of Honea Path, the first of which, Number 20, reads as follows:

"Section 1. It shall be deemed a misdemeanor for any person to manufacture, sell, or give away, transport, handle, store, or conceal, or have in possession, receive, or purchase of another within the Town of Honea Path any illicit or contraband alcoholic liquors.

"Section 2. It shall be deemed a misdemeanor for any person to offer for sale or solicit the purchase of any of such

liquors, whether for present or future delivery and whether acting for himself or as agent for another.

"Section 3. It shall be deemed a misdemeanor for any person to permit the drinking of alcoholic liquors on any premises under his control, and any such place is declared to be a nuisance and no person shall keep, manage, permit or in any manner whatsoever assist, aid or abet in the keeping or managing of such a place.

"Section 4. It shall be deemed a misdemeanor for any person to drink or offer to another a drink of alcoholic liquors in the Town of Honea Path. Any person convicted of a violation of this ordinance in any particular shall be fined not less than $1.00 nor more than $100.00, or be imprisoned for a term of not less than one day nor more than thirty days in the discretion of the Mayor."

As is quite obvious, the foregoing ordinance was passed in 1930, and in the light of national prohibition, as its terms and date readily show.

We think it abundantly clear that such ordinance is invalid and void. National prohibition was long ago done away with by the adoption and ratification of the Twenty-first Amendment. South Carolina has since adopted, and many times amended, new liquor laws, all of which leaves this particular prohibition ordinance without foundation and in conflict with state law. We need to point only to Sec. 4-121 of the 1962 Code of Laws, which reads as follows:

"Conflicting municipal ordinances suspended; enforcement of State laws.—All ordinances of towns and cities of this State prohibiting the doing of any of the acts and things prohibited by the provisions of Sec. 65-1270 or this article, except Secs. 4-96 and 4-100, are hereby suspended, it being hereby declared that the State has occupied the field of the subjects covered thereby; judicial and police officers of towns and cities shall enforce such provisions within their respective jurisdictions."

Ordinance Number 20 of the Town of Honea Path, if it then had any remaining vitality, was clearly suspended and set aside upon the enactment in 1956 of what is now Sec. 4-121 of the Code.

The other ordinance of the Town of Honea Path which appellant was convicted of violating is Number 102, which reads as follows:

"It shall be unlawful for any person to assault, resist, abuse or in any manner, by word or act, interfere with a police officer or any other officer or employee of the City in the discharge of his duty or to aid or abet any such assault, resistance, abuse or interference and any person or persons found guilty of such offense shall be fined not more than One Hundred and no/100 ($100.00) Dollars or imprisoned for not more than thirty (30) days."

Appellant contends that said ordinance is too vague and indefinite to be enforceable, and, therefore, unconstitutional, being in violation of the due process clauses of both the State and Federal Constitutions. He also contends that the ordinance contravenes the constitutional guaranties of freedom of speech.

. We quote the following pertinent language from 21 Am. Jur. (2d) 97 *et seq.,* Criminal Law, Sec. 17,

"The requirement that crimes be defined with appropriate definiteness, which has been referred to as a fundamental common-law concept, is now generally held to be an essential element of due process of law. * * * The underlying principle is that all are entitled to be informed as to what the state commands or forbids and no one should be required, at peril of life, liberty or property, to speculate as to the meaning of penal statutes. * * * And no obedience may be exacted to a rule or standard that is so vague and indefinite as to be really no rule or standard at all. The indefiniteness may be * * * as to what acts are prohibited, or as to what acts are excepted from the prohibition. * * *

"The standard of certainty required is higher in statutes punishing for offenses than in the case of those depending primarily upon civil sanctions for enforcement. And it is especially high where the offense lies in an area affecting freedom of expression. * * *

"The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden. It is also violated by a statute so vague as to make criminal an innocent act, or to prohibit expressions protected by First Amendment guaranties of freedom of speech and press."

The following is taken from 16 Am. Jur. (2d) 951, Constitutional Law, Sec. 552,

"It is a general principle of statutory law that a statute must be definite to be valid. A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."

The vice of unconstitutional vagueness becomes aggravated where a statute operates to inhibit the exercise of individual freedoms effectively guaranteed by State and Federal Constitutions. See *Cramp v. Board of Public Instruction,* 368 U. S. 278, 82 S. Ct. 275, 7 L. Ed. (2d) 285; *Winters v. People of State of N. Y.,* 333 U. S. 507, 68 S. Ct. 665, 92 L. Ed. 840; *Scull v. Virginia,* 359 U. S. 344, 79 S. Ct. 838, 3 L. Ed. (2d) 865.

In the light of the foregoing principles of constitutional law, we cannot help but conclude that the ordinance here under attack is unconstitutional and void insofar as it attempts to make "abuse" of, or "interference" with any officer "in any manner, by word or act" a penal offense. The term "assault" has an established meaning, and the term "resist" may very well be sufficiently precise to connote some affirmative physical action. The term "abuse" is not defined in the

ordinance. One's view as to what that term was intended to mean or connote would likely vary considerably, depending upon whether the viewpoint was that of the alleged abuser or that of the person allegedly abused.

The ordinance, *inter alia,* makes it a penal offense for one to interfere with a police officer "in any manner, by word or act, \* \* \*". Aside from any invasion of the constitutional guaranties of freedom of speech, just what kind of word or words would amount to interference with an officer is not at all indicated by the ordinance.

To allow police officers, or other officers actively engaged in assigned duties, the discretion to arrest and prosecute those whom they feel have made inappropriate remarks upon a charge of interference would, we think, invite gross abuses of discretion and impose unfair penalties and burdens upon the citizenry. The facts of the instant case rather forcefully demonstrate the fundamental reasons why the particular ordinance is constitutionally invalid. It is true that there was some evidence on the part of the prosecution, expressly contraverted by the appellant, to the effect that appellant offered some slight physical interference or resistence. But it is not contended that he physically harmed or injured either of the officers or even attempted to do so. The record as a whole rather strongly indicates the probability that there would have been no arrest and no charges against the appellant but for the verbal disagreement between him and the Town police officers as to the proper disposition of the bottled beverages. Under these circumstances the conviction under this ordinance may well have rested upon nothing more than mere words uttered by the appellant which were not pleasing to the local police officers who obviously did not like anyone questioning or challenging their authority. In view of the probability that the conviction of the defendant rested upon the foregoing provisions of Ordinance No. 102, which are herein declared invalid, such conviction must be set aside.

Our conclusion that both of the ordinances here involved are invalid makes it unnecessary to consider or discuss vari-

ous other questions raised on the appeal. In accordance with the views herein expressed, the judgment below is reversed and the convictions and sentences are vacated and set aside.

Reversed.

Moss, C. J., and Lewis and Brailsford, JJ., concur.

Littlejohn, J., concurs and dissents.

Littlejohn, Justice (concurring and dissenting) :

The opinion of Mr. Justice Bussey holds Ordinance No. 20, relative to alcoholic liquors, invalid. I limit my concurrence to this part of the opinion to the result only. The facts prior to the arrest are in dispute and are unnecessary to disposition of the issue. I would limit the opinion to a simple legal holding that the ordinance is void by reason of legislative action subsequent to the passage of the ordinance.

I concur in that part of the opinion which holds that "abuse" of, or "interference" with any officer "in any manner, by word or act" as included in Ordinance No. 102 is unconstitutional. In my view there remains a valid ordinance and a proscription against any person assaulting or resisting a police officer in the discharge of his duty.

The case should be sent back for a new trial on the issue of whether the defendant resisted arrest. The evidence hereafter recited makes a jury issue for retrial. Chief of Police Cooley testified:

"When I reached my hand, he just brushed my hand back, squeezed in front of me and closed the boot."

"He started bucking, trying to get away from me."

"Well, me and him had a scuffle, yes, sir."

"I didn't put the grabs, the clamps, ever what you call them, on him until I got him to the car. I turned him loose and tried to get him to get in. He wouldn't get in and I told him if he didn't get in, we were going to have to get him for resisting arrest and he would not get in. Me and Mr. Cannon both were trying to get him in and I put the grabs on him and that's when he got in."

Witness Shaw testified as follows:

"Yes, sir, Mr. Cooley just about had to carry him to the car. When they got him to the car, they couldn't get him in the car and officer Cannon helped get him in the car and they carried him to City Hall."

Witness Taylor testified as follows:

"Well, that would be a hard proposition to say because whenever he told him he was under arrest, I stepped back because he told him he couldn't arrest him."

"Oh, he had plenty of assistance to get to the police car."

During the course of the trial counsel for the Town of Honea Path, over objection, brought out violations of the law by the defendant in 1935 in Missouri, and in California in 1941. A witness may be cross examined as to crimes involving moral turpitude, but such is not permitted when too remote in point of time. These offenses were too remote, and I would order a new trial on the resisting arrest issue because of the court's failure to exclude the testimony. The fact that the town's liquor ordinance was invalid does not mean that the arrest was illegal. The defendant could have been charged with violation of the State statute regulating possession of alcoholic beverages. I therefore concur in result in part, concur in part, and dissent in part.