19293

The STATE, Respondent, v. James V. DeANGELIS, Appellant

(183 S. E. (2d) 906)

Bussey, J., dissented and filed an opinion in which Brailsford, J., concurred.

*Messrs. Patrick E. Treacy and Jack McGuinn,* of Columbia, *for Appellant,* cite:

*Phillip K. Wingard, Esq., Sol.,* of Lexington, *for Respondent.*

September 28, 1971.

Littlejohn, Justice.

The appellant was convicted on September 14, 1970, of violating Section 5-621 of the 1962 Code making unlawful

the operation of certain gambling devices. He has appealed that conviction and the sentence imposed. We affirm.

In other cases at the May 1970 term of the General Sessions Court for Lexington County the appellant pled guilty to six indictments charging him with receiving stolen goods, conspiracy to commit the crime of receiving stolen goods, and accessory after the fact to housebreaking and grand larceny. On those six indictments in May 1970 appellant was sentenced in the aggregate to a term of 20 years, provided that upon service of 3 years the balance of his sentence be suspended and he was placed on probation for 5 years; he was allowed 120 days within which to arrange his business affairs before commencement of the service of the 3 year prison term. Thereafter, he moved for a new trial on the grounds of after discovered evidence. The motion was denied and he appealed. Disposition of that appeal was made by opinion of this Court filed July 8, 1971. Inasmuch as the sentence imposed in the case now before this court refers to the sentence imposed in prior cases, reference is specifically made to the July 8, 1971 opinion of this Court (*State v. DeAngelis,* 182 S. E. (2d) 732).

In June 1970, while the appellant was enjoying his 120 days of freedom in order to arrange his business affairs, he was charged with operating gambling devices in the High Chaparral Restaurant. He requested and was granted a preliminary hearing; he also requested that the State have all of its witnesses present for the preliminary hearing. One witness, Lewis Brickle, Jr., was not present.

At the trial out of which this appeal arises the State presented two witnesses to the jury. The first was an undercover agent named Parker. The second was Mr. Brickle, an employee of the South Carolina Tax Commission which issues licenses for coin operated vending and amusement machines. The defendant did not present any testimony.

Section 5-621, under which the appellant was convicted, reads as follows:

"§ 5-621. Slot machines, etc., unlawful; exceptions.—It shall be unlawful for any person to keep on his premises or operate or permit to be kept on his premises or operated within this State any vending or slot machine, punch board, pull board or other device pertaining to games of chance of whatever name or kind, including such machines, boards or other devices that display different pictures, words or symbols, at different plays or different numbers, whether in words or figures or, which deposit tokens or coins at irregular intervals or in varying numbers to the player or in the machine. But the provisions of this section shall not extend to coin-operated nonpayout pin tables with free play feature or to automatic weighing, measuring, musical and vending machines which are so constructed as to give a certain uniform and fair return in value for each coin deposited therein and in which there is no element of chance.

"Any person violating the provisions of this section shall be subject to a fine of not more than five hundred dollars or imprisonment in the State Penitentiary or upon the public works of the county wherein the offense is committed for a period of not more than one year or both fine and imprisonment, in the discretion of the court."

The first question raised by the appellant on this appeal is whether the defendant was a person subject to the statute, and whether the machine was covered by the terms of the law as quoted above.

State's witness, Parker, testified that he visited the High Chaparral on several occasions. It was his testimony that the place of business was operated by the appellant, a bartender, and two girls. He stated that "Mr. DeAngelis was running the operation—they didn't do anything unless he told them to do it—he was more or less manager of the place."

The machine, referred to as a "monkey machine" was described as follows:

"A. Yes, sir. It's about four or five foot high. You insert a dime in it. It has a lever on it that you push. It has, on the

right hand side, a diagram to go by for what you can win, if certain numbers or certain pictures show up, like one cherry, two cherries, three cherries, three oranges, three lemons, three watermelons, and it's according to how they fall in the slot. There's three little open holes. And if three watermelons fall, you win certain amount of games, according to what the diagram says you win. And it replays by games, if you match up certain pictures."

The machine is operated by electricity; no skill is required in playing it. It would appear to be quite similar to that which is often called a slot machine or a "one-armed bandit" except that the machine here involved does not have an automatic payoff feature. It is obviously not a pin table machine with free play feature as exempted from the statute quoted above.

The judge allowed the jury to say whether the appellant was a person subject to the statute, and whether the machine was subject to the statute, and in so doing, we find no error.

Appellant argues that a new trial should be granted because witness Brickle of the Tax Commission testified at the trial even though he did not testify at the preliminary hearing. We know of no rule of law in this State which requires that every witness who testifies in a trial be present and testify at the preliminary hearing. Certainly, under the facts of this case, no prejudice has been shown. We find no error.

Appellant contends next that Section 51-621 is unconstitutionally vague, and for that reason the conviction cannot be sustained. An analysis of its wording convinces us that a man of reasonable intelligence is given fair notice of the machines proscribed; that the statute cannot be used in a capricious or discriminatory manner; and that the personal liberties guaranteed by the Bill of Rights are satisfied thereunder. The cases cited by appellant present inapposite factual situations, primarily in the civil rights field.

Appellant also challenges the validity of the sentence imposed by the trial judge. That sentence as orally stated from the bench was as follows:

"THE COURT: Well, the first thing I'm going to do is to revoke 1 year of his probation. And then the sentence of the Court is that, in addition to the revocation, that he pay a fine of $500.00 and serve one year. And I'm going to let that year run with the year that I have revoked on his probation, concurrent with it. So that for this violation he would serve one year and pay a fine of $500.00. I want to say that I don't have much sympathy, Mr. Cooper, for the defendant. I believe, had I been placed on probation after having been given 20 years, if somebody brought one of those machines in my office I would have thrown him and the machine out. And I think that's what he should have done."

The sentence as written out, signed by the judge, and filed with the clerk was as follows:

"The Sentence of the Court is that the defendant James DeAngelis be confined at hard labor upon the Public Works of Lexington County or in the State Penitentiary for a period of One Year and pay a fine of five Hundred Dollars. That upon service of ————of this Sentence, or the payment of ————the balance of the said Sentence shall stand suspended and the defendant shall be placed upon Probation for a period of————, the condition thereof being that he shall refrain from the violation of any State or Federal Penal Laws.

/s/ JAMES B. MORRISON,
*Presiding Judge.*

Date 9/14/70

"To run concurrent with one year revocation."

Appellant submits that during the 120 days allowed to arrange his business affairs he was not in a probationary status. At the time of the sentence the prosecuting attorney did not contend otherwise, and at least

inferentially conceded "he's not exactly on probation, * * *." Ambiguity or doubts relative to a sentence should be resolved in favor of the accused. We therefore hold ineffective that portion of the sentence which attempted to revoke a portion of the May 1970 probationary sentence.

There remains for determination the question of whether the sentence imposed in this case runs concurrently or consecutively with the three year sentence imposed in May. The intent of the trial judge is controlling. The argument that the trial judge intended for the defendant to serve a total of four years before going on probation has much appeal. At the same time, the written sentences actually entered are susceptible of the inference that a total of three years shall be served, as well as that a total of four years should be served. Accordingly, under the rationale of *Finley v. State,* 219 S. C. 278, 64 S. E. (2d) 881, we think the sentences sufficiently indefinite as to require the interpretation that the one year sentence imposed in this case run concurrently with the three year sentence imposed at the May term of court. When sentences are vague and indefinite the terms will run concurrent.

Obviously the $500 fine is not a concurrent punishment, and the net effect of the sentence is to add a penalty by way of the fine.

All exceptions are found to be without merit, and the judgment of the lower court is

Affirmed.

Moss, C. J., and LEWIS, J., concur.

BUSSEY and BRAILSFORD, JJ., dissenting.

BUSSEY, Justice (dissenting).

If the conviction in this case is to be affirmed, then I am in accord that the one year sentence, as a matter of law, runs concurrently with the sentence imposed at the May 1970 Term in Lexington County. However, for the reasons hereinafter set forth, I am of the view that the defendant is

entitled to a judgment of acquittal. Additional facts need to be stated for a proper understanding of the case.

The High Chapparal is also known as Irmo Steak House. At the time of the alleged offense, such was in the process of construction and renovation and as a result was open only for dancing, with a juke box, and the sale of wine and beer. The "monkey machine", along with three lawful pin table machines, was located in plain view in an area immediately adjacent to the dining room and dancing area. The particular device, like a "one-armed bandit", is coin operated and winning combinations consist of three fruits, etc. in a row. Beyond this, there is no similarity, such device being an amusement device with a rather elaborate free play feature, but no payout, automatic or otherwise, and all in all much more akin to a pin table machine, I submit, than to a "one-armed bandit". Like any other amusement device, it, of course, could be used for the purposes of gambling, but there is not a scintilla of evidence in the record that this particular device was ever so used or intended by the defendant to be so used.

Parker, the undercover agent who seized the machine and who was the State's only material witness, frequented the Irmo Steak House for one week prior to seizing the machine and making charges against the defendant. Although he testified that he thought the device was illegal when he first saw it, he did not make a case; instead, he himself played the machine quite a lot for a period of a week and admittedly enjoyed doing so. In the course of this week, he did his best to entice and entrap the defendant into gambling on the device and also to entice and entrap the two waitresses into prostitution, offering each of them a hundred dollars. Only after his unsuccessful efforts to entrap the defendant and/or his employees into known illegal conduct, did this undercover agent seize the device and prefer charges.

I am not at all convinced that this particular device is, or was intended to be, prohibited by Code Sec. 5-621. There

are, of course, various devices that are clearly and expressly prohibited and those that are clearly and expressly permitted, but if the particular device is illegal, it is so because of the following language, "other device pertaining to games of chance of whatever name or kind * * *."

If the particular device is made unlawful by virtue of the foregoing language, it would follow, as the night the day, that Parcheesi, Backgammon, Monopoly, and sundry other games of chance, commonly and innocently played for amusement only, would seem to be likewise unlawful and subject the possessor thereof to a sentence of one year in the penitentiary, plus a five hundred dollar fine. Such could not, I think, have been the intention of the legislature.

It is well settled in this State that a criminal statute must be strictly construed against the State and any doubt must be resolved in favor of the defendant. See the many cases collected in West's South Carolina Digest, Statutes, Key No. 241. In a criminal prosecution it must appear not only that the defendant has violated the letter of the law, but the spirit thereof. *City of Anderson v. Fant,* 96 S. C. 5, 79 S. E. 641. In any view of the matter, I consider that there is here substantial doubt which should be resolved in favor of the defendant and a judgment of acquittal entered.

Even this Court has encountered doubt and difficulty in determining just what devices are unlawful under some of the broad language of Code Sec. 5-621 and its predecessor. See *Harvie v. Heise et al.,* 150 S. C. 277, 148 S. E. 66 (a 1929 three to two decision). In 1939, in the case of *Alexander v. Martin,* 192 S. C. 176, 6 S. E. (2d) 20, which was a civil proceeding, this Court in a three to two decision held pin table machines, with free play features, to be unlawful. Such holding was reaffirmed in 1941 in the civil case of *Alexander v. Hunnicutt,* 196 S. C. 364, 13 S. E. (2d) 630, with two justices concurring "under the binding authority" of *Alexander v. Martin.* In the 1948 civil case of *Ingram v. Bearden,* 212 S. C. 399,

47 S. E. (2d) 833, the Court again divided three to two over the question of whether "coin operated nonpayout pin tables with free play feature[s]" had been legalized by a a 1947 act of the General Assembly, the majority holding against the legality thereof.

The 1945 case of *State v. Appley,* 207 S. C. 284, 35 S. E. (2d) 835, appears to be the only criminal case in which a conviction for possessing pin table machines with free play features was affirmed, but the question of strict construction of penal statutes does not appear to have been raised or considered therein. In 1949, pin table machines with free play features were expressly legalized by an amendment of what is now Code Sec. 5-621, thus laying to rest the previous confusion thereabout.

In the present case we have an amusement device which is admittedly not a pin table, but in two key respects it is the same. It is coin operated and it has free play features. The opinion of Mr. Justice Littlejohn does not attempt to decide whether this particular device is or is not in violation of the statute. If the trial judge had any opinion thereabout, he did not so rule, but, instead, submitted to the jury, erroneously I am convinced, the issue of whether or not the machine was unlawful. The device itself was an exhibit, demonstrated in the presence of the court, and, there being no conflict in the evidence, the legality or illegality thereof became purely a question of law.

When members of this Court, law enforcement officers and, apparently, the trial judge encounter difficulty and uncertainty in determining whether a particular type of amusement device is prohibited by statute, settled principles of law demand the resolution of such doubt in favor of the defendant, and his acquittal. If judges and law enforcement officers are uncertain, how much more difficulty does the average lay individual have in determining just what is or is not prohibited by the statute?

While the particular machine here is not literally a pin table, and, accordingly, not within the precise language of

54

the statute exempting such, it is well within the spirit of the exemption. In 82 C. J. S. Statutes § 382, p. 893, it is said,

"* * * exceptions in a penal statute are construed liberally in favor of a person charged with a violation of the statute."

In the view that I take of the case, it would be unnecessary to reach and dispose of the contention that Sec. 5-621 is unconstitutionally vague, in violation of the due process clauses of both State and Federal Constitutions. Accordingly, I shall refrain from dealing with that issue except to say that I am convinced that such contention on the part of the defendant is of probable merit and one that should not be lightly brushed aside.

BRAILSFORD, J., concurs.