19589

The STATE, Respondent, v. Ronald Stephen HAULCOMB and
Kenneth Pinneau, Appellants

(195 S. E. (2d) 601)

*Messrs. Howard P. King* and *David W. Goldman,* of Sumter, *for Appellant,*

*Messrs. R. Kirk McLeod,* and *Robert W. Burkett,* of Sumter, for *Respondent,*

March 20, 1973.

LITTLEJOHN, Justice:

The defendants, Ronald Stephen Haulcomb and Kenneth Pinneau, were tried by jury in July, 1971, in the Court of

General Sessions of Sumter County on indictments charging them with safecracking and housebreaking. In an opening statement to the jury, defendants admitted the allegations of the indictments and thereafter relied solely on the defense of entrapment.

The jury wrote a verdict of guilty as to each charge and both defendants were sentenced. Thereafter, a timely appeal was filed with this Court. Subsequently, defendants moved before this Court to suspend the appeal and asked this Court to grant leave to them to move before the trial judge for an order directing a new trial upon the grounds of after-discovered evidence.

We heard arguments upon this motion and handed down an order granting the motion. The appeal was argued and we deferred a ruling on the appeal on its merits pending the lower court's ruling on the motion for a new trial.

The motion for a new trial was denied by the trial judge; defendants took exceptions and filed a timely appeal.

In this opinion we will consider both the appeal from the trial on its merits and the appeal from the denial of a new trial.

In the appeal from the jury verdict, the defendants raise several questions. They challenge: (1) the trial judge's charge to the jury; (2) the constitutionality of South Carolina Code of Laws § 16-337 (1962, supp. 1972) covering safecracking; (3) the failure of the state to produce the alleged informer-participant as a witness; (4) the trial judge's refusal to admit evidence of defendants' offer to take a polygraph test.

Prior to a consideration of the questions raised, a brief summary of the facts leading up to the arrest is in order.

J. P. Strom, Chief of the South Carolina Law Enforcement Division (SLED), testified without objection as follows: In early February, 1971, he was contacted by an individual who explained that a second individual, named Ed-

ward "Red" Coran (a known safecracker), had been approached by certain persons who were planning a safecracking. The safecracking was to take place in South Carolina and Coran's assistance had been sought. Strom arranged for an interview with Coran and paid his air fare from Florida to Columbia. During their meeting (in mid-February), Coran verified that he had been approached concerning the safecracking. He stated that he did not know where it was to occur but that he would contact Strom immediately upon getting this information. Strom paid Coran $200 and promised to pay him an additional $200 after an arrest was made.

After Coran contacted Strom again, a stake-out was set up at a store in Oswego, (near Sumter) South Carolina, during the evening of March 7, 1971. At approximately 9 p. m. Coran, accompanied by the defendants, entered the store through a rear door. The dial from a safe, which was located in the store, was knocked off. Coran then managed to leave the store undetected by most of the 20 to 25 law enforcement officers who then closed in on the premises and arrested both Haulcomb and Pinneau.

Coran was not present at the trial, although Strom testified that he could have arranged for his presence.

The defendant Pinneau testified that he knew nothing of the safecracking until the middle of February, when he was approached by Coran. Earlier, he said, Coran's wife had told him that Coran had been to South Carolina.

The defendant Haulcomb testified that he knew nothing of the safecracking until March 3, 1971, when he was approached by Coran and asked to go along as a lookout. Haulcomb further testified that he did not consent to go until the day before the incident occurred, and then only after much prompting from Coran.

Each defendant testified that he had never heard of or been to Sumter prior to the incident. Both testified that Coran personally broke into the store and knocked off the dial of the safe.

The defendants offered testimony, in the absence of the jury, that they were present at SLED headquarters on April 15, 1971, and offered to take a lie detector test; that they were willing at that time to, answer any questions of Chief Strom or any SLED agent, particularly as to their first knowledge of the possibility of committing an offense in South Carolina, and that their offer to take the test was refused. The remainder of the evidence concerns more details of the events leading up to the arrest.

Inasmuch as the defendants admitted that they committed the acts alleged by the State, the real issue for determination was: Did the defendants prove by the greater weight of the evidence that they were entrapped? The verdict hinged upon this issue. Entrapment is recognized as a valid defense in this State. *State v. Jacobs,* 238 S. C. 234, 119 S. E. (2d) 735 (1961). It is an affirmative defense which necessarily assumes that the acts charged were committed.

The defendants moved at the beginning of the trial to quash the indictment for "safecracking" on the ground that the statute quoted below is unconstitutionally vague, and on the ground that the punishment permitted is cruel and unusual as prohibited by the South Carolina and the United States Constitutions. The motion was overruled; by proper exceptions the defendants now ask this Court to reverse the trial judge and hold the safecracking statute invalid.

The statute, § 16-337 of the 1962 Code reads as follows:

*"Safecracking.*—Any person convicted of using explosives, tools or any other implement in or about a safe used for keeping money or other valuables with intent to commit larceny or any other crime shall be guilty of a felony and be sentenced to the Penitentiary during the term of his life; *provided,* that if the jury recommended the defendant to the mercy of the court, a sentence of not less than ten years' imprisonment may be imposed, in the discretion of the court."

This statute was enacted in 1904 by the General Assembly. It was entitled. "An Act to Provide Punishment for Safe-Crackers." In 1955, it was amended so as to add, after the word *explosives,* "tools or any other implement." Apparently, its constitutionality on the grounds now submitted to this Court has never been challenged before.

We recognize that crimes must be defined with definiteness such that men of common intelligence would not guess at its meaning. *Town of Honea Path v. Flynn,* 255 S. C. 32, 176 S. E. (2d) 564 (1970); *State v. DeAngelis,* 257 S. C. 44, 183 S. E. (2d) 906 (1971).

■ The contention that the statute is not sufficiently definite to place a person of common intelligence on notice as to what is prohibited is clearly without merit. The offense is designated in bold-faced letters—"SAFECRACKING."

■ We are also of the opinion that the statute is not unconstitutional by reason of the fact that life imprisonment is directed upon conviction if the jury does not recommend mercy, and not less than ten years' imprisonment is directed when the jury does recommend mercy. There is no contention that the sentence imposed on these defendants was cruel and unusual. Indeed, the record does not even reflect what sentence the judge in his discretion imposed. The gist of the defendants' argument is that life imprisonment is not constitutionally justified in any case whatsoever for the offense of safecracking. The argument that the penalty is out of proportion to other penalties providid by statutory law has some appeal, but the argument is basically an attack on the wisdom of the statute. It does not persuade us that it is unconstitutional. The penalties are properly matters for determination by the legislature. We refuse to hold that the penalties provided are constitutionally impermissible.

The defendants have also taken exception because of the refusal of the judge to charge:

". . . [W]hen one witness is more peculiarly available to one side than the other side, that it can be presumed that the evidence which he would have presented would be unfavorable to the side that failed to call him, that being the testimony of Mr. Coran."

At the outset, to have such an inference, it becomes necessary to determine which of the parties to the action should have called the witness in order to determine who should bear the onus of the adverse presumption. See Annot., 5 A. L. R. (2d) 893 (1949).

As indicated above, the pivotal issue for determination by the jury was not whether the State proved its case, but whether the defendants had proved the defense of entrapment. After the defendants admitted their participation in the offenses charged, the defendants became the moving parties on the entrapment issue. It was not incumbent upon the State to prove the defense of entrapment. So far as the record shows, after Chief Strom stated that he could have arranged to have had Coran present in the court during the trial, no request was made that the State or the judge produce him so that he could testify on behalf of the defendants. Under the facts of this case, the rule which the defendants requested the judge to state to the jury concerning the presumption was not applicable.

The contention that the defendants were entitled to be confronted with Coran is without merit. There was no objection to Chief Strom's testimony relative to his conversation with Coran. Since no objection was raised in the court below, the issue may be submitted for the first time on appeal.

The defendants offered testimony, in the absence of the jury, that they were willing on April 15, 1971, to take a lie detector test at SLED headquarters and

that they would have answered any questions, but such offer to take the test was refused by the law enforcement officials. They now argue that the court erred in refusing to allow evidence to go to the jury to the effect that they offered to take the test and the offer was refused. They submit that they were deprived of their constitutional right to a fair and impartial trial.

We recognize in *State v. Britt,* 235 S. C. 395, 111 S. E. (2) 669 (1959), that the exclusion of evidence concerning a polygraph test was based on the fact that the polygraph had not attained scientific acceptance as a reliable and accurate means of ascertaining truth or deception. We stated that such information should be excluded whether the accused or prosecution seeks its introduction. We acknowledge the gain in acceptance the polygraph has enjoyed since 1959, but we are not convinced that the scientific acceptance attained warrants a change in the position this Court took in *State v. Britt, supra.*

The gist of the defendants' argument is: We should have been allowed to testify that we offered to take a polygraph test which was inaccurate, the results of which are not admissible in court, to prove our contention that we were entrapped. We cannot say that the judge erred in excluding the testimony.

The defendants next contend that the trial judge erred in refusing a requested jury charge based on the theory that Chief Strom used Coran as his agent to entrap them. The trial judge, commenting upon the request, said: "The sole testimony that we have before us, uncontradicted testimony, which as I recall your theory is that it is uncontroverted that Chief Strom said there was no deal made with the informant, there was no agency, and his testimony was that he would not allow anybody to entrap anyone and I find no element of agency involved in this case at all." We agree. The record simply does not warrant the inference that Chief Strom was the designing person and used Coran to induce the defendants, innocent throughout of criminal intent, to carry out the design of Chief Strom.

If the defendants were induced to commit the crime, the proposition for committing such acts originated with Coran and not with Chief Strom.

The defendants requested that two other items be included in the trial judge's charge on entrapment. The trial judge denied the inclusion of these items, saying they were covered in his general charge.

It would serve no useful purpose to quote at length the trial judge's charge and the charges requested by the defendants. It is apparent that the general charge as to entrapment correctly stated the substance of the defense of entrapment as set forth in *State v. Jacobs, supra.*

The defendants' defense was entrapment. Obviously, they wanted a charge on the law of entrapment applicable in this State. Actually, we are not convinced that they were entitled to such a charge. It is clear that the unlawful scheme was not conceived in the mind of Chief Strom. It is equally clear that the scheme was conceived in the mind of Coran and/or the defendants prior to any contact with Chief Strom, and everything done by Chief Strom thereafter in cooperation with Coran at most provided an opportunity for the defendants to commit crime. It is apparent that the matter came to the attention of Chief Strom after the formation of the nefarious scheme. When a law enforcement officer merely provides an opportunity for crime, no entrapment is involved. The trial judge charged the jury that the law of entrapment comes into play "where one is instigated, induced or lured by an officer of the law or other person for the purpose of prosecution into the commission of a crime which he had otherwise no intention of committing." This is a correct proposition of law. The evidence does not warrant the conclusion that Chief Strom "instigated, induced, or lured" these defendants to violate the law.

We now consider the exceptions to the order of the judge which denied a new trial on the basis of after-discovered evidence.

At the hearing of the motion for a new trial, counsel presented the affidavits of Emory Blackmon and Walter Nealy, who averred that they, on or about December 20, 1971, broke into a store in Sumter County. In substance, it was asserted that Coran induced them into committing the crime which Coran had planned and in which he had participated. They further asserted that law enforcement officers apprehended them in the act and that Coran disappeared. Both plead guilty to housebreaking and were sentenced to two years, which they were serving at the time the affidavits were given.

The motion for a new trial was denied by the judge upon the grounds (1) that the evidence would be inadmissible at the new trial, and (2) that the evidence was not in existence at the time of the initial trial of the case and, therefore, was not properly after-discovered evidence.

The evidence, if admissible at all, would not in actuality be after-discovered; it is after-created evidence.

We have very clearly set forth what must be shown to warrant a new trial based on after-discovered evidence. See *State v. Wells*, 249 S. C. 249, 153 S. E. (2d) 904 (1967). We are of the opinion that after-discovered evidence refers to evidence of facts existing at time of trial which aggrieved party was excusably ignorant. *United States. v. Bensen*, 142 F. (2d) 232 (9th Cir. 1944); *Fox v. First West. Sav. & Loan Assoc.*, 86 Nev. 469, 470 P. (2d) 424 (1970).

We find no error in the trial judge's refusal of defendants' motion for a new trial, nor in the conduct of the trial itself.

Affirmed.

Moss, C. J. and LEWIS, J., concur.

BRAILSFORD and BUSSEY, JJ., dissent.

BRAILSFORD, Justice (dissenting) :

I respectfully suggest that the opinion of Justice Littlejohn is inconsistent in holding, on the one hand, that the evidence raised a jury issue as to the defense of entrapment ("The verdict hinged upon this issue"); and, on the other

hand, in agreeing with the trial judge that there was no evidence that the paid informer Coran acted as agent for the South Carolina Law Enforcement Division in entrapping appellants. If the latter conclusion is sound, the issue of entrapment should not have been submitted at all, for there is of evidence or entrapment except through the agency of Coran. This sketchy record shows only that Chief Strom, after interviewing Coran and receiving information about a conspiracy to open a safe in South Carolina, paid him $200-.00 and promised him $200.00 more after the arrest of the conspirators, which, inferentially, was to follow commission of the felonious act. If Coran gained the money paid and promised by Chief Strom by enticing the appellants to come to South Carolina and commit a crime which they would not otherwise have committed, (which a properly instructed jury would have been fully justified in concluding) the defendants were entitled to acquital on the defense of entrapment. Having used Coran and paid him for his services, the prosecution was affected by his misconduct, in the very matter for which he was engaged, just as it would have been by that of any officer or agent. In my view, the court erred in refusing an instruction which would have enlightened the jury on this theory of the defense.

I would reverse the conviction and remand the case for a new trial.

BUSSEY, J., concurs.